HIRAM S. PROBASCO, Appellant, *v.* PAUL BOUYON *et al.,* Respondents.

### February 28, 1876.

1. Where a man has given his own name to a particular manufacture, and sells the use of his name in the manufacture of those particular goods, a court of equity will restrain him from advertising goods of the same quality under his own name, though actually made by him.
2. Where one named "Oakes" sold the exclusive right to manufacture and sell "Oakes' Candies," he was restrained from manufacturing and selling candies made by him as "Oakes' Candies."

APPEAL from St. Louis Circuit Court.
*Reversed and remanded.*

*M. L. Gray,* for appellant, cited : Filley *v.* Fassett, 44 Mo. 168 ; Taylor *v.* Carpenter, 2 Sandf. (N. Y.) Ch. 617 ; *s. c.,* Am. T.-M. Cas. 14, 32 ; Stone *v.* Colan, Am. T.-M. Cas. 115 ; Browne on Trade-Marks, 94, secs. 32, 35, 52, 66, 144 ; Howe *v.* Howe Machine Co., 50 Barb. ; *s. c.,* Am. T.-M. Cas. 421, 427 ; Croft *v.* Day, 7 Beav. 89 ; *s. c.,* Am. T.-M. Cas. 649, 651 ; Upton on Trade-Marks, 22, 23 ; Browne on Trade-Marks, secs. 39, 40, 41, 516, 395 ; Stonebreaker *v.* Stonebreaker, 33 Md. 252, 267 ; Beard *v.* Downs, 6 Ind. 200 ; Coats *v.* Holbrook, Am. T.-M. Cas. 30, and following ; Bradley *v.* Norton, Am. T.-M. Cas. 338.

*T. J. Rowe*, for respondents, cited: Bury *v.* Bedford, 10 Jur. (N. S.) 503; Hall *v.* Barrams, 10 Jur. (N. S.) 57; McAndrew *v.* Bassett, 10 Jur. (N. S.) 493; Wellington *v.* Fox, 3 Myl. & Cr. 338; 1 Story on Eq. (5th ed.), sec. 679; Alger *v.* Thacher, 19 Pick. (Mass.) 53; 17 Barb. (N. Y.) 608; Filley *v.* Fassett, 44 Mo. 168; Singleton *v.* Bolton, 3 Doug. 293; Bloss *v.* Bloomer, 23 Barb. 604; Faber *v.* Faber, 49 Barb. 357; Croft *v.* Day, 7 Beav. 66.

BAKEWELL, J., delivered the opinion of the court.

This is a bill in equity, filed by plaintiff against defendants, wherein he alleges that he was for some years in partnership with defendant Oakes in the business of manufacturing and selling candies called in the trade " Oakes' Candies," " Oakes' Pure Home-made Candies," etc., which candies were made, put up, and sold by them alone, and were a great source of profit; that the name was used as a trade-mark, and was the property of the firm, and so recognized by dealers; that he afterwards purchased, and now owns, the good-will and franchises of the firm, and the exclusive use of the name and trade-mark, which defendant Oakes then covenanted to warrant to him; that he has continuously since that date continued said trade and manufacture, and used and claimed and owned said business and name as his exclusive property; that defendants, confederating to injure him, are making and selling an article of candy under the names, tokens, and trade-marks so sold to him, and thereby deceiving the public and taking advantage of the reputation and 'trade-marks of plaintiff, to his damage $1,000; that he has no adequate remedy at law, and will be irreparably damaged by a continuance of such acts. He prays for an account of profits, and an injunction, and for general relief.

Defendant Bouyon, in his separate answer, denies all the affirmative allegations of the petition, and says that Oakes is, and for years before said partnership was, a practical candy-maker; that his name became attached to his can-

dies, and only means that he makes them, as in fact he does; that the alleged bill of sale is void, so far as it sells the exclusive right to make and sell "Oakes' Candies;" that it is against public policy if construed to prohibit Oakes from making candy, and that, if Oakes does make candy, it must, of necessity, be Oakes' candy; that defendant makes and sells "Oakes' Candies" at his place of business in St. Louis, and has extensively advertised the same, as he lawfully might.

Oakes, in his separate answer, admits all allegations of plaintiff's bill as to their former partnership, the manufacture of candy by Probasco & Oakes, the dissolution of the firm, and the bill of sale; as to the rest, he answers as Bouyon does, and further says that he did not intend to sell, and knew he could not sell, the right to make Oakes' candy, or the use of his own name; denies that plaintiff has acquired the exclusive right to make and sell candies under said name and trade-marks, and denies that he or Bouyon are or were selling candies on Probasco's reputation, and says Probasco deceives the public by selling Probasco's candies under the name of Oakes'. He admits that at, before, and since commencement of this suit he was working for Bouyon, making candies for him, and that Bouyon advertised and sold them as candies made by Oakes.

The evidence proved the allegations in the bill, and showed that Oakes, in selling out to Probasco, charged specially for the use of the name; that Probasco and Oakes, when together, both made the candies and adopted the name of "Oakes' Candies" as the shorter name; that Probasco had a trade-mark of an oak tree; that he did not hold out to the public that the candies sold by him since the dissolution were actually made by Peter Oakes; that the reputation of the "Oakes Candies" was mostly local, though some orders were received from the country and from adjoining States; that plaintiff sells nothing as "Oakes' Candies" but what are made by himself; that he had repeatedly

notified both defendants to desist from selling candies as " Oakes' Candies," and that they were doing so in a public place in St. Louis on a large scale.

The bill of sale was offered in evidence, and purports, in consideration of $2,016, to be a conveyance, by "Peter Oakes to Hiram S. Probasco and his legal representatives forever, of Oakes' one-half interest in the stock and equipments, good-will, and name of the firm of Probasco & Oakes, and the exclusive right to make and sell 'Oakes' Candy,' and to use the name thereof, and all the property and assets of said firm of Probasco & Oakes, and all the franchises thereof." It concludes with a covenant of warranty, and is under seal.

The court below dismissed the bill. Defendant duly excepted, and brings the case here by appeal, a motion for new trial being overruled.

We think the Circuit Court erred in dismissing the bill.

The names of "Oakes' Candy," "Oakes' Pure Candies," etc., were, it appears, first used and applied by Probasco & Oakes to candies flavored with fruits, and made and sold by that firm, and under that name acquired a reputation and sale. These names pointed out the origin and ownership of the manufacture. By the dissolution of the firm, and Oakes' sale to Probasco, the latter acquired the rights of the firm to this name. Oakes could so sell his name as to deprive himself of the right to use it for his own manufacture, and give that right to another, under the circumstances of this case, as detailed above. *Young* v. *Stonebreaker*, 33 Mo. 117.

It cannot be maintained that the name "Oakes' Candies" is, properly speaking, a trade-mark, or that its exclusive use can be vindicated on that ground. A man whose name is Oakes may make candies, and, if he makes them, he may call them "Oakes' Candies," and he cannot be restrained from doing so, in the absence of fraud or bad faith. It was held in *Curtis* v. *Bryan*, 36 How. (N. Y.) Pr. 38, that there

could be no special property in the name of " Mrs. Winslow's Soothing Syrup " which would prevent any one of the name of Winslow from manufacturing an article which should be really a soothing syrup, and calling it by the proper name of the manufacturer, however this might injure the trade of a former Winslow who had largely advertised, and at great expense brought into public notice, a syrup with that name. But there are circumstances under which a man will be prohibited from giving his own proper name to a manufacture —circumstances which savor of fraud. Such was the case of *Croft* v. *Day*, 7 Beav. 84. Day & Martin entered into a partnership to manufacture blacking at 97 High Holborn, London ; Martin retired, as in the case before us, and gave to his partner, Day, the right to use his name in the business. A nephew of Day, whose name was the same, seeing that the Day & Martin blacking had a high reputation, made an arrangement with a man named Martin for the use of his name, and began manufacturing blacking and selling it at No. 90 1-2 High Holborn, under the name of Day & Martin, and, on the application of the legal representatives of the original Day & Martin, who were both dead, he was restrained.

The case of *Campere* v. *Bajou* was decided in the Tribunal of Commerce, of Paris, and, on appeal, was affirmed by the Imperial Court of Appeals. In no country, perhaps, is the rule of commercial morality stricter than in France. The code of commerce of that country forbids persons who succeed to the business of another continuing it under his name. Bajou, a glove-maker, assigned his business, authorizing the assignee, exclusively, to adopt the description " Successor to Bajou," and to stamp his gloves with the manufacturer's mark, which was the *fac simile* of the signature of Bajou. Bajou, in violation of this agreement, sent gloves to New York stamped with his *fac simile*. He was prohibited from employing, for the future, his name as a manufacturer's mark upon his gloves, and was heavily fined.

The tribunal said that Bajou had assigned the *fac simile* of his name as a manufacturer's mark, and to pretend that, because it was his name, he had still a right to apply it to gloves manufactured by him, would be, not only to seek to resume what he had assigned, and of which he had received the price, but also to apply for his own benefit the increased custom of the assignee. Reported in full in Upton on Trade-Marks, 73.

. So, in like manner, whatever rights other men may have to the name of Oakes, this particular Oakes, the defendant in this case, will not be permitted to use the name of Oakes. in the manufacture and sale of candy, at least in this locality, where the name has a peculiar signification and a business value, and where he is bound by a valid agreement to abstain from the use of his name. If it is claimed that Oakes has a right to use his own name, the answer is that he has no right to use it in this way, if he has sold that right, and if, as we hold, it was a right which he could sell and which plaintiff could acquire.

A court of equity will restrain a breach of contract or of covenant, and to do so in this case will not be against public policy or in restraint of trade. Oakes may still make and sell. candy, but not under the name the use of which he has for this purpose sold. He may make and sell the very same candies, and is not obliged to conceal the fact that they are made by him ; but he may not, in St. Louis, advertise them either by sign over his shop door, or by label on the boxes in which they are packed, or in any other general and public way, as "Oakes' Candies." Because, for a valuable consideration, he has covenanted with plaintiff and his legal representatives that he will not do so, and to the terms of this contract he must be held.

It is urged that to grant the relief asked for is to aid the plaintiff in practicing a fraud and deceit upon the public, by palming off upon the community candy as made by Oakes which is really manufactured by other men. But this is

not so. It appears that these candies were originally made by Oakes and Probasco, and, in casting about for a name, they hit upon Oakes as being the shorter and more convenient word. In calling these candies "Oakes' Candies," the proprietor only takes advantage of a title which he has helped to make popular in the trade. He does not thereby hold out that these candies are actually made by Peter Oakes. The original "Gillott," the original "Day & Martin," the original "Rowland" are long since dead, but after their death their legal representatives were protected by the courts in the use of their names for their manufactures; and, in furnishing this protection, the courts did not consider that they were sanctioning deceit.

The principles above set forth seem to be fully sustained by the authority of well-considered cases. In our opinion it was error to dismiss the bill. On the pleadings and evidence a perpetual injunction should have been granted, restraining defendants from manufacturing or selling "Oakes' Candies," and an accounting ordered.

The judgment of the Circuit Court is reversed and the cause remanded. The other judges concur.