SAMUEL FRAZER ET AL.

v.

THE FRAZER LUBRICATOR CO.

</div>

1.  SALE OF NAME—TRADE MARK.—A person who has carried on a business under a trade name or manufactured and sold a particular article in such manner as by the use of his name as a trade name or trade mark to cause the business or article to become known and established in favor under such name or trade mark, can sell or assign such trade name or trade mark when he sells the business or manufacture, and by such sale or assignment conclude himself from the further use thereof.

2.  NAME AS TRADE MARK—SALE.—A party who had been in the business of making axle grease and had used his own name as a trade name—"Frazer's Axle Grease," sold his business and the patent for distilling the oil, etc., which had two years yet to run, and covenanted never to engage in the same business and not to use or permit others to use his name as a trade mark or otherwise in the manufacture of such product. After the patent had run out Frazer engaged in the same business and used his own name as a trade name in connection with the business. Held that the stipulation

Frazer v. Frazer Lubricator Co.

never to engage in the same business was in general restraint of trade being without limit as to time or territory; that the sale of his name as a trade name forever concluded Frazer from using his name in the manufacture of such article.

3. INFRINGEMENT OF TRADE MARK.—It is not necessary to infringe a trade mark that it should be counterfeited or exactly simulated. It is enough that such a resemblance is produced as is calculated to mislead purchasers who use such ordinary care and observation as are commonly used by the public.

4. DAMAGES.—In this class of cases where the main relief sought is to restrain defendants and protect complainants in the rights granted by the contract, the ascertaining of the profits made by the wrong-doer, or the damage done to the complainants, is treated as incidental, and it is the practice to decree the profits or damages to the complainants.

APPEAL from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding. Opinion filed March 31, 1886.

In 1856 Samuel Frazer, one of the appellants, commenced at Galena, Illinois, the manufacture of an axle grease, in accordance with a method discovered by him for combining rosin oil, salsoda, palm oil and water. The rosin oils were distilled from rosin at some five different degrees of temperature, the variation in temperature producing a difference in the quality of the oil.

The process of distillation to produce from the rosin the different oils used in making the axle grease, was claimed by Frazer as an invention or discovery, and he obtained a patent in the year 1860, covering his process for distillation of the rosin oils. Frazer continued the manufacture of the axle grease at Galena until 1868, then entered into partnership with Swift, Hunter and Favor, and under the firm name of Frazer, Swift & Co., the manufacture was commenced in Chicago. In 1869, the partners remaining the same, the firm name was changed to " The Frazer Lubricator Company," and Frazer remained connected with the firm and the manufacture and sale of the axle grease by the firm until February, 1870. On or about February 7, 1870, John A. Packard and Edward Hunter, Otis Favor and George B. Swift, made an arrangement to purchase from Frazer all his interest in the business and plant of the firm, The Frazer Lubricator Company, then

engaged in the manufacture of axle grease, and also his patent for making rosin oil. Frazer was paid for his interest in said business and patent about $17,500, and to consummate the transactions the following agreement was executed between the parties:

" This agreement made and entered into this seventh day of February, A. D. 1870, by and between Samuel Frazer, of Galena, Illinois, (now temporarily residing in Chicago in said State) party of the first part, and Edward Hunter, John A. Packard, Otis S. Favor and George B. Swift, of said Chicago, parties of the second part,

" Witnesseth : That for a valuable consideration and the further consideration of ten dollars to the party of the first part paid by the party of the second part, the receipt whereof is hereby confessed and acknowledged, the party of the first part hereby sells, assigns, transfers and conveys unto the said parties of the second part, all his right, title and interest in and unto certain letters patent, (and the invention thereby secured) which were issued to the party of the first part by the United States of America, on the 12th day of June, in the year of our Lord one thousand eight hundred and sixty, bearing thereon the number of said patent, to wit, No. 28,663, said letters patent embracing and covering in general terms a new and useful improvement in distillation of oils from rosin; said invention being particularly described in the schedule and diagram attached to said letters patent and of record in the patent office in the city of Washington, in the District of Columbia. The party of the first part, for the consideration aforesaid, hereby authorizes the parties of the second part, their assigns, successors, heirs, administrators, executors or legal representatives, to use his name so far as it may be necessary to use it as a trade mark, or as indicating the material or product which has heretofore been manufactured under said letters patent and generally known and called Frazer's Axle Grease, Frazer's Lubricator, or Frazer's Grease, and confers the authority to use his name as aforesaid upon the parties of the second part, their assigns, successors, etc., exclusively, and binds himself to confer that authority upon no

other person or persons, corporation or association whatsoever, and he hereby sells, assigns and transfers for the same afore-said consideration, unto the said parties of the second part, their assigns, successors and legal representatives, all interest, right and title which he may have in any renewals or extensions of said letters after the expiration thereof, and hereby expressly agrees and binds himself unto the said parties of the second part, their assigns, successors or legal representatives, to make in his own name but for the benefit of said parties of the second part, all or any applications, petitions or requests in writing, or otherwise, which may be required by said parties of the second part, for the purpose of obtaining any renewals, extension or re-issuance of said letters patent, and without charge therefor, provided said parties of the second part assume and pay all costs and expenses attendant thereupon; and said party of the first part agrees and binds himself not to engage hereafter in the manufacture, directly or indirectly, of the product or material secured by said letters patent and known as aforesaid, and not to use or authorize the use of his name as a trade mark or otherwise for the manufacture of said lubricator, axle grease or grease, or any other product made under said letters patent. The parties of the second part hereby agree to hold said party of the first part harmless against all or any costs or liabilities arising from the use of his name as aforesaid.

"In witness whereof the parties hereto have hereunto set their hands and seals the day and year first above written."

(Signature of the parties under seal.)

April, 1870, the appellee corporation, The Frazer Lubricator Company, was organized, the then owners of the property and business of the firm known by that name being the promoters of the corporation; and by proper instruments of conveyance and assignment, the corporation became vested with all the property of the firm, and all the rights, privileges and duties of the parties of the second part under the agreement above set forth, and became successors in the business of manufacturing "Frazer's Axle Grease," "Frazer's Lubricator" and "Frazer's Grease" to Frazer and the differ-

ent firms with which he had theretofore been associated in conducting said business.

Frazer was the first person who undertook, in this country, the manufacture of an artificial axle grease, upon a commercial scale, or as an article of merchandise, to supply the public demand, and he and his associates succeeded in establishing a large and profitable trade in their product, and for a number of years, and while Frazer and his different firms were engaged in the business, they introduced their manufacture to the public under the names "Frazer Axle Grease," "Frazer's Lubricator" and "Frazer's Grease," and these names and words indicating that the article was manufactured by Frazer and his associates, under the process discovered by him, were either stamped upon each package of axle grease made by them, or were printed upon labels posted upon each package sold, and the lubricant so designated was by such names widely known and extensively used.

Since the purchase of Frazer's interest in the business, and the making of the agreement set forth, the appellee company have continued the manufacture of the axle grease, compounding it of the same ingredients and in substantially the same proportions that were used by Frazer, and the axle grease has been put up in similar packages, and appellee has continued the sale of the axle grease under the name of "Frazer's Axle Grease," manufactured by the Frazer Lubricator Company; and during the fourteen years since the making of the agreement with Frazer set out, has expended large sums in advertising the product under the name of "Frazer's Axle Grease," and has invested a large amount in factories for the manufacture of said article, and greatly increased the trade therein in this and foreign countries, and kept the same before the public and in favor with the trade and known to the consumers as "Frazer's Axle Grease."

About the time it commenced business, appellee adopted a label which it has continued to use, placing the same on each package of the lubricant manufactured and sold. The label is of yellow paper four inches wide and five inches long and has printed on it "Frazer's Axle Grease, manufactured by the

Frazer Lubricator Company, principal office, 31 Superior street, Chicago, Ill." The words "Frazer's Axle Grease" are printed in large capitals, and the word "Frazer's" is printed across the top of said label, and the words "axle grease" a little below the middle of said label, and in the intervening space is a picture of two wagons each drawn by two horses, a driver for each team. The left forward wheel of one of the wagons has fallen off, and the driver of the other in passing by is represented as saying: "My friend you should use Frazer's Ax'e Grease." The other replies: "That is what I shall do after this." In the lower edge of the picture are the words "trade mark" in small capitals. On the left of the picture is printed, "The best axle grease in the world," and on the right, "Factories: New York, Chicago and St. Louis."

In 1880, Frazer obtained a patent for a process of distillation of rosin oils, the oils being drawn off at different temperatures and treated somewhat differently from the process described by the patent of 1860. In February, 1884, Frazer, in partnership with others, and under the firm name of "S. Frazer & Co.," commenced the manufacture and sale at Galena, Ill., of axle grease, which is, in appearance, like the axle grease manufactured by the complainants, and is put up in packages similar in size and shape and color, to those used by complainants. The grease made by appellant is made in nearly the same manner as that manufactured by the complainants, and is compounded of substantially the same ingredients and in very much the same proportions as used by complainants, and a chemical analysis shows the two products to be substantially the same material. The Galena firm attached to the packages of their product a label about six inches long and four and a half inches wide. On it is printed, "Superior Axle Grease, manufactured by S. Frazer & Co., Galena, Illinois, under letters patent, dated October 19, 1880. Every can warranted." The words "Superior Axle Grease" are in moderate sized capitals at the top of the label. Underneath those words and near to them, are the words, "S. Frazer & Co.," in large capitals. "Galena, Illinois," is at the bottom of the labels, and between those words and the words, "S. Frazer &

Co.," at the top, is a picture of two threshing powers in operation, one with six horses and one with ten horses. The driver of the six horses is represented as saying: " We use Superior Axle Grease;" the driver of the ten horses, as saying: " We don't," and the various features of the picture are intended to represent the contrast in operation of the machines that have Superior Axle Grease for a lubricant and those that do not.

This label was not always printed on paper of uniform color, blue, brown and yellow having been used ; but before the commencement of this suit other colors were abandoned and the label was printed on yellow paper of a little darker shade than the paper used by the complainants for their label, appellant finding that the yellow paper retained a better impression of the cut. Appellants also attached to the packages of their grease the following, printed on paper similar to their label :

## "NOTICE.

" This grease is a new and superior axle grease, invented by Samuel Frazer; the original inventor of the old 'Frazer's Grease,' but the public are informed, and hereby notified, that the grease is positively a different grease from ' Frazer's Grease,' 'Frazer's Axle Grease,' or ' Frazer's Lubricator,' and has been recognized as such in the patent office in Washington, by the grant of a patent therefor. And all persons desiring to purchase axle grease are hereby expressly cautioned not to mistake this grease for either the said ' Frazer's Grease,' ' Frazer's Axle Grease,' or ' Frazer's Lubricator.'

" Every can of this grease will be labeled Superior Axle Grease, manufactured by S. Frazer & Co., Galena, Illinois, and will bear our trade mark as given on the opposite side of this can.

"This grease is a free lubricant and will not gum in cold weather or when the wagon is not in use. It will be found to be the very best grease in use for machinery of all kinds.

" Every can warranted.

" S. FRAZER & Co."

A bill was filed in August, 1884, by appellee, to restrain

Frazer v. Frazer Lubricator Co.

Frazer and his partners from using the name "Frazer" or "S. Frazer & Co." upon any label in connection with the words "axle grease," as indicating that the same was manufactured by Frazer, or in connection with any form of words or pictures as a trade mark or name for axle grease, and to restrain Frazer and his associates from manufacturing axle grease after the process and with ingredients used by complainants in compounding "Frazer's Axle Grease," and from making any axle grease in which rosin oil, made by the same or a similar process of distillation to that described in the 1860 patent, formed an essential ingredient, and praying for damages for injury done. A decree was entered by the court below restraining Frazer and the other defendants from using said name in connection with the words " axle grease," or upon any label, placard, advertisement or package intended to promote the sale of any axle grease manufactured by S. Frazer & Co., or any other axle grease except axle grease of complainant's manufacture, and generally, from doing anything that would tend to conflict with the benefit complainants might derive from the use of the name "Frazer" as their trade mark. The court refused to enjoin Frazer from manufacturing axle grease from the same ingredients as those used by complainants.

By stipulation $4,500 was agreed upon as the damage which should be allowed to complainants by reason of the sale of axle grease made by S. Frazer & Co., put up and labeled as described, and thus diminishing the sales of complainants and depriving them of profits, but objection is saved in the stipulation to the power or jurisdiction of the court to enter a decree for damages. The court decreed the damages to complainants, and the case is brought here by appeal. Appellees assign cross-errors for the refusal of the court to enjoin Frazer from engaging in making axle grease similar to theirs and composed of the same ingredients.

Messrs. COBURN & THACHER, for appellants ; as to trade mark, cited Candee v. Deere, 54 Ill. 456 ; Newman v. Alvord, 49 Barb. 588 ; Blackwell v. Dibrell, 14 O. G. 633.

The name of a person, firm or corporation can not consti-tute a trade mark : Browne on the Law of Trade Marks, 134 ; Ainsworth v. Walmesley, 44 L. J. R. 252 ; Comstock v. White, 18 How. Pr. 421 ; Clark v. Clark, 25 Barb. 76.

Messrs. McCLELLAN & CUMMINS, Mr. M. W. FULLER and Mr. L. L. BOND, for appellee; as to the sale of a name as a trade mark, cited Burdsall·v. Curran, 27 Off. Gaz. 1320 ; Old-ham v. Longmead, 3 T. R. 437; 1 Webster P. C. 291 ; Wal-ton v. Laveter, 8 C. B. 162, 187 ; Chambers v. Chrichley, 23 Beavan, 374 ; Thomas v. Quintard, 5 Duer (N. Y.), 80 ; Kins-man v. Parkhurst, 18 How. 289 ; Thorly's Cattle Food Co. v. Massom, Cox's Manual of Trade Mark Cases, 395 ; Dixon Cru-cible Co. v. Guggenheim, Am. Trade Mark Cases, M. C. 395–42 ; Rep. N. S. 851 ; Howe v. Howe, do. 421 N. Y. Supreme ; Rogers v. Rogers Co., 11 F. R. 495 ; Crofts v. Day, No. 76 Cox's Manual.

MORAN, J.   The main points of dispute between the parties to this suit arise on the construction to be given to the agree-ment of February 7, 1870, set out in full in the statement of facts.   Consideration of the circumstances under which the agreement was made and an analysis of it in the light of these circumstances will aid in arriving at its true construction.

Frazer, at the time of making the agreement, was disposing of his entire interest in the business of manufacturing axle grease, a business in which he and his partners had been en-gaged for many years under different firm names.   The axle grease had been compounded according to a formula discov-ered by Frazer, and had been made known to the public under the name of " Frazer's Axle Grease," " Frazer's Lubricator " and " Frazer's Grease."   Under such designations the product became favorably known, and the business which Frazer sold out was a growing and profitable one.   Frazer's patent did not cover the process of compounding the axle grease but did cover an improvement in the distillation of rosin oils, which oils formed an essential ingredient in the axle grease as man-ufactured.

The parties of the second part to the agreement were purchasing Frazer's interest therein with the intention of continuing the manufacture of the grease in the same manner that it had theretofore been made, and selling their product under the name by which it had become known and under which it had gained a reputation for excellence.

Frazer's patent had, at the time of the sale, four years to run, and if not renewed or extended all persons would have the right to distill rosin oils as therein described at the end of that time.

Looking now at the agreement we find that the parties contract with reference to different subjects, to wit, the letters patent, the use of Frazer's name by the parties of the second part, the extension or renewal of the patent, and the engagement of Frazer in the manufacture thereafter of the material secured by said letters patent. Bringing the portions of the agreement having reference to the patent together we find that Frazer sells and assigns his patent to the parties of the second part, and his right and title to any extensions or renewals thereof, and agrees to sign all writings that may be required by said second parties for obtaining renewals or extensions of said patents.

As to the use of Frazer's name we find Frazer authorizes its use by the second parties and their assigns and successors exclusively so far as may be necessary, either as a trade mark or as indicating the material which had been manufactured under the letters patent and known as " Frazer's Axle Grease," " Frazer's Lubricator " or " Frazer's Grease;" and agrees to confer that authority on no other person or corporation or association, and not to use or authorize the use of his name as a trade mark or otherwise for the manufacture of said lubricator, axle grease or grease or any other product made under said letters patent. If it was in the power of Frazer to invest Packard and his associates by contract with the right to use his name in the manufacture and sale of the product or material mentioned and to exclude himself and his associates from the use of his name in the manufacture or sale of such product or material, it must be admitted that he has done so by the

terms of the agreement. That it is legally competent for a person who has carried on a business under a trade name or manufactured and sold a particular article in such manner as by the use of his name as a trade name or trade mark to cause the business or article to become known and established in favor under such name or trade mark, to sell or assign such trade name or trade mark when he sells the business or manufacture, and by such sale or assignment to conclude himself from the further use thereof, seems to be well established on authority. Kidd v. Johnson, 100 U. S. 617; Grow v. Seligman, 47 Mich. 607; Dixon Crucible Co. v. Guggenheim, 3 Am. L. T. 288.

It is contended by appellants' counsel, however, that whatever right was given by the contract to Packard and his associates to use the name of Frazer, terminated at the expiration of the patent, which was by the same contract assigned to him. We do not so construe the contract. The right to distill rosin oils by the process covered by the patent would be free to all persons on the expiration of the patent, but the business of compounding axle grease, according to Frazer's formula, and selling it in the market under the name of "Frazer's Axle Grease," might continue as long as the parties engaged in it saw fit, and the longer it continued, if honestly conducted, the greater would be the reputation of the article and the more valuable the use of the trade name or trade mark under which it was sold. The phrases "manufactured under said letters patent," and "made under said letters patent," are not to be read as fixing a time limit to the contract, but rather as identifying the material or particular kind of axle grease which was to be sold under the names "Frazer's Axle Grease," "Frazer's Lubricator," and "Frazer's Grease." Nor is there, as appellants contend, any element of concealment or imposition upon or lack of good faith with the public in appellees' continuing to sell their product under the name of "Frazer's Axle Grease." It is shown by the record that the grease is compounded of the same ingredients and in the same manner and in all respects after the same formulas as used by Frazer and his different firms to which appellee is successor.

Frazer v. Frazer Lubricator Co.

No suggestion is made that appellee has attempted to palm off a cheaper or an inferior article, or an article that is any other than the same that was sold by Frazer and his associates under the name of "Frazer's Axle Grease." The name indicates the origin of the article, and identifies it to the public. A name, though originally the name of the first maker, may in time become a mere trade mark or sign of quality and cease to denote or be current as indicating that any particular person is the maker. * * * * * In such cases the name is accepted in the market either as a brand of quality or it becomes the denomination of the commodity itself, and is no longer a representation that the article is the manufacture of any particular person. Hall v. Barrows, 4 De G., J. & S., 150. There is no representation that Frazer's Axle Grease is now manufactured by Frazer. On the contrary it is truthfully stated on the label used, that it is manufactured by the Frazer Lubricator Company. The doctrine invoked by counsel and applied in Manhattan Med. Co. v. Wood, 108 U. S. 218, has no pertinency to the facts of this case.

The contract giving to appellee the use of Frazer's name as a trade mark in the sale of the axle grease, and agreeing not to use or permit others to use said name as a trade mark or otherwise in the manufacture of the article, is in no sense against public policy as being in restraint of trade. The portion of the contract now under consideration, in no way prevents him from engaging in the manufacture of axle grease, or in the manufacture even of the particular kind of axle grease made by appellee. He is at liberty to use his skill and experience in the compounding of a better grease from the same ingredients, but his contract restrains him from availing himself, in putting his grease before the public, of the reputation gained by the use of his name as a trade mark on the axle grease made in accordance with his formulas, and known to the public as "Frazer's Axle Grease." The public are not deprived by those stipulations of the contract of Frazer's skill, nor of the benefits of his competition in business as a rival of appellee. There is no restraint of trade but a restraint of the use, in the particular trade, of a name which he treated as

having a property value, and sold to appellee and agreed not to use in connection with the sale and manufacture of the particular product.

This brings us to the question, were the acts done by Frazer and his co-defendants a violation of appellees' rights. Whether we regard the complainants as having in the words and picture printed upon their labels and attached to packages of their product a trade mark, entitled to protection from infringement, or we place the obligations of defendants toward complainants on the stipulations of Frazer contained in the contract, we are of opinion that the conduct of defendants was wrongful. To infringe a trade mark it is not necessary that it should be counterfeited or exactly simulated. It is enough that such a resemblance is produced as is calculated to mislead purchasers who use such ordinary care and observation as are commonly used by the public. McLean v. Fleming, 96 U. S. 245.

The label used by defendants on their packages is printed on yellow paper differing slightly in shade from that used by complainants. The pictures on the two labels are different but express to the beholder the same idea. The name Frazer is made prominent and so printed as to direct attention to the point that the axle grease is a Frazer product. When the labels are examined together there are many differences but the general appearance of the label, the color of the paper, the resemblance of the prominent features which go to make up the whole, taken in connection with the fact that the label is placed on packages in size, shape and appearance like those of appellee, are well suited to divert the attention of the purchaser from a critical examination that might correct the impression gained by casual inspection. The fact that careful buyers who scrutinize closely are not deceived only shows that the injury is less in degree, not that there is no injury. 39 Conn. 450.

The use of the name "Frazer" and the words "axle grease" are the misleading elements in the combination of words on the label, and prefixing the adjective "superior" to the words "axle grease" has no corrective effect. The conspicuous re-

Frazer v. Frazer Lubricator Co.

iteration of the name on the labels and printed notice attached to the packages of defendants and in the circular sent out by them indicates a conviction on the part of appellants that in making sales in the market and to consumers of an article of axle grease, "Frazer's" was a good name to conjure with. Yet the entire potency of the name was acquired in manufacturing and selling "Frazer's Axle Grease," and all the advantages of its use in the sale of such a product was contracted by Frazer to Packard and his associates, and belongs to appellee. Extended fame and notoriety have been given to the name by the expenditure of large sums in advertising, and the enlarged business done in the manufacture and sale of the article by appellee, and equity will not permit Frazer nor those who associate with him in business to use the name which has thus become a distinguishing feature of appellee's trade mark in the sale of an article similar to appellee's in such manner as to derive a benefit from the trade established by appellee, or deprive appellee of the full benefit of the use of such name, particularly in the face of his agreement "not to use or authorize the use of his name as a trade mark or otherwise for the manufacture of said lubricator, axle grease or grease, or any other product made under said letters patent."

A case in some of its features very like the one at bar is Probasco v. Bonyon, 1 Mo. App. 241. Oakes and Probasco were in partnership in the manufacture and sale of candies, which became known under the name of "Oakes' candies." Oakes sold his interest in the business to Probasco, and gave him by a bill of sale the "exclusive right to make and sell Oakes' candy and the use of the name thereof." Afterward Oakes formed another partnership and began the sale of candies under that name. The court in deciding the case say: "Whatever rights other men may have to the name of Oakes, this particular Oakes, the defendant in the case, will not be permitted to use the name of Oakes in the manufacture and sale of candies, at least in the locality where the name has a peculiar signification and a business value, and where he is bound by valid agreement to abstain from the use of his name. If it is claimed that Oakes has a right to use his own name, the an-

swer is that he has no right to use it in this way, if he has sold that right, and if, as we hold, it was a right which he could sell and which plaintiff could acquire. A court of equity will restrain a breach of contract or of covenant, and to do so in this case will not be against public policy or in restraint of trade. Oakes may still make and sell candy, but not under the name the use of which he has for this purpose sold." See also Oakes v. Tonsmierre, 4 Woods, 555, and as illustrating the application of this doctrine by courts of equity, Homes, Booth & Co. v. Holmes, Booth & Co., 37 Conn. 278 ; Shaver v. Shaver, 54 Iowa, 208; Thorly Food Co. v. Massom, 42 L. T. Rep. N. S., 1851; Stonebraker v. Stonebraker, 33 Md. 252; Gillis v. Hall, 2 Brewster, 342; 45 N. Y. 291.

The court below was correct in refusing to enforce against Frazer the stipulation of the agreement which prevented him from engaging in the manufacture, directly or indirectly, of the product or material of the axle grease. Such stipulation is without limit as to time or territory within which it is to bind, and therefore is in general restraint of trade. The court below had jurisdiction to enter a decree for the damages. In this class of cases where the main relief sought is to restrain defendants, and protect complainants in the rights granted by the contract, the ascertaining of the profits made by the wrong-doer or the damage done to the complainants, is treated as incidental, and it is the practice to decree the profits or damages to the complainants. Hostetter v. Vowinkle, 1 Dillon, 329; Atlantic Milling Co. v. Robinson et al., 20 Fed. Rep., 217. Here the damages were ascertained by agreement, and it would have been idle to send them to the law side to enter the judgment. Equity having jurisdiction for one purpose will administer complete relief. Savage et al. v. Berry, 2 Scam. 545; Wade v. Bunn, 84 Ill. 120.

No error appearing in the decree appealed from, it must be affirmed.

<div align="right">Decree affirmed.</div>