RUSSIA CEMENT COMPANY *vs.* WILLIAM N. LEPAGE.

Essex.    April 3, 4, 1888. — June 19, 1888.

Present : MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Trade-mark — Use of Name — Contract — Estoppel — Injunction.*

A manufacturing firm, which called its product "LePage's Liquid Glue" after the name of a partner, with his consent, sold the "right to use the trade-marks belonging to or in use by said copartnership" to a corporation, of which that partner became an officer, and which continued to make the glue under the same name, registration thereof being sought by him at the Patent Office. Afterwards he left the corporation, and began to do business as "LePage's Liquid Glue Company," and to make and sell "LePage's Improved Liquid Glue." *Held*, on a bill in equity to restrain him from using those names, that he had parted with the right to use his own name as a trade-mark, and that the use of the word "Improved" did not justify such use; and that an injunction should issue.

BILL IN EQUITY, filed September 16, 1886, to enjoin the defendant from using as trade-marks the words " LePage's Liquid Glue " and " LePage's Improved Liquid Glue," and from doing business under the style of " LePage's Liquid Glue Co."

At the hearing before *Gardner,* J., there was evidence tending to prove the following facts.

About January 1, 1880, the defendant and one Brooks, copartners, doing business under the name of the Russia Cement Company, began to manufacture and sell glues. They made a heavy glue, designated " Russia Cement," and a class of light glues ; and in that month, in discussing the question by what name the light glues should be called, Brooks suggested that they adopt the name " LePage's Liquid Glues," on the ground that it was " a peculiar name; when it appears in print it will strike the eye, and fix itself as something singular, unique ; it has a French sound, foreign, and I think it will be a taking name ; it is worth a great deal more than any ordinary name." The name " LePage's " accordingly was decided upon, with the consent of LePage, as the name by which the light glues should be known, that word being always employed, but a special word being put in before the word " glue," such as " straw," " carriage," etc., indicating the particular use for which each glue was designed. The labels upon the cans and bottles in which the light glues were put up, though differing widely in other particulars, agreed in having the word " LePage's " prominently printed as a prefix to the words describing the kind of glue, as did their public advertisements of their lighter glues.

On February 4, 1882, the defendant and Brooks, as such copartners, executed and delivered to the plaintiff corporation, which had been organized by them, a bill of sale of all the personal property belonging to the firm, " together with all the cash and book accounts belonging to the said firm, the good-will of the business, and the right to use the trade-marks belonging to or in use by the said copartnership." Thereupon the plaintiff engaged in, and continued to carry on, the business of making and selling such glues as the defendant and Brooks had made and sold as copartners, using similar labels, selling the light glues under the trade-mark or trade name of " LePage's," and advertising the goods at an expense of over $30,000.

The defendant was treasurer of the plaintiff corporation from its organization until some time in 1884, and was afterwards a director, until he left it in February, 1886. In November, 1883, the plaintiff wrote to its attorney at Washington, with the knowledge and approval of the defendant, who was at that time the treasurer of the corporation, a letter containing an inquiry as to the steps necessary to secure, by registration at the United States Patent Office, the right to use the words " Russia Cement " and " LePage's." The defendant withdrew from the plaintiff corporation in February, 1886, and shortly after engaged in the manufacture and sale of liquid glue at Gloucester, Massachusetts, where the business of the plaintiff had always been carried on. The defendant adopted the name and address of " LePage's Liquid Glue and Cement Co., Gloucester, Mass.," and advertised his business under this name, called his liquid glue " LePage's Improved Liquid Glue," and described its manufacture as carried on " under the management of William N. LePage, the original inventor and manufacturer of LePage's Liquid Glue."

The judge refused the injunction, and dismissed the bill, and reported the case for the consideration of the full court.

*E. R. Hoar & C. Browne*, for the plaintiff.

*W. Gaston & F. Forbes*, (*F. L. Washburn* with them,) for the defendant.

DEVENS, J. The plaintiff and the defendant are manufacturers of liquid glue, and the defendant, whose name is LePage, uses the same name as that used by the plaintiff to describe his glue, and by which to advertise it, except that he introduces therein the word " improved." The introduction of this word into the name of the article manufactured by him does not justify its use, if in other respects the plaintiff has just ground to object to it. Sebastian on Trade-Marks, 52. *Frazer* v. *Frazer Lubricator Co.* 18 Bradw. (Ill.) 450, 462. *Gillis* v. *Hall*, 2 Brewst. 342.

A person cannot make a trade-mark of his own name, and thus debar another having the same name from using it in his business, if he does so honestly, and without any intention to appropriate wrongfully the good-will of a business already established by others of the name. Every one has the absolute

right to use his own name honestly in his own business for the purpose of advertising it, even though he may thereby incidentally interfere with and injure the business of another having the same name. In such case the inconvenience or loss to which those having a common right to it are subjected is *damnum absque injuria.* But although he may thus use his name, he cannot resort to any artifice or do any act calculated to mislead the public as to the identity of the business firm or establishment, or of the article produced by them, and thus produce injury to the other beyond that which results from the similarity of name. *Holloway* v. *Holloway,* 13 Beav. 209. *Meneely* v. *Meneely,* 62 N. Y. 427. *Gilman* v. *Hunnewell,* 122 Mass. 139. *Rogers* v. *Rogers,* 53 Conn. 121.

While this is the general rule, it is also true that one may so sell or part with the right to use his own name as a description or designation of a manufactured article as to deprive himself of the right to use it as such, and confer this right upon another. A name used as an adjective of description is not necessarily understood by the public as any assertion that the person whose name is used is the maker of the article. One who has carried on a business under a trade name, and sold a particular article in such a manner, by the use of his name as a trade-mark or a trade name, as to cause the business or the article to become known or established in favor under such name, may sell or assign such trade name or trade-mark when he sells the business or manufacture, and by such sale or assignment conclude himself from the further use of it in a similar way. *Horton Manuf. Co.* v. *Horton Manuf. Co.* 18 Fed. Rep. 816. *McLean* v. *Fleming,* 96 U. S. 245. *Dixon Crucible Co.* v. *Guggenheim,* 2 Brewst. 321. *Probasco* v. *Bouyon,* 1 Mo. App. 241. *Oakes* v. *Tonsmierre,* 4 Woods, 547, 555. *Celluloid Manuf. Co.* v. *Cellonite Manuf Co.* 32 Fed. Rep. 94. *Ainsworth* v. *Walmsley,* L. R. 1 Eq. 518, 524. *Shaver* v. *Shaver,* 54 Iowa, 208. *Frazer* v. *Frazer Lubricator Co., ubi supra.*

A person may be enjoined, therefore, from using his own name as a description of an article of his own manufacture, and from selling the article under that particular name, when he has parted with the right thus to apply it. *Gillis* v. *Hall,* 2 Brewst. 342. *Kidd* v. *Johnson,* 100 U. S. 617, 619. It is not upon the

ground of the invasion of the trade name adopted by another, but by reason of the contract he has made, that he is deprived of the right himself to use his name as all others of the same name may use theirs.

The recent case of *Hoxie* v. *Chaney*, 143 Mass. 592, which has been decided since the decree originally made in the case at bar was rendered, is quite conclusive in regard to it. It was there held that " A. N. Hoxie's Mineral Soap " and " A. N. Hoxie's Pumice Soap " were trade-marks, and assignable as such, and that they did not necessarily mean that the soaps were made by A. N. Hoxie. In that case, one who had adopted these trade-marks, or, more properly, trade names, for his manufacture, entered into a partnership with another, under articles by which he contributed the good-will of the business he was carrying on, with the tools, implements, and fixtures, and on the dissolution of this partnership conveyed to his partner " all my right, title, and interest in and to all and singular the partnership property belonging to the firm, meaning hereby to sell and convey all my interest in the entire assets of said firm"; and it was further held that these trade names became, by the articles of copartnership, a part of the property of the firm, and that the right to use them as such passed by the bill of sale, and that the partner so conveying had parted with his own right so to use them.

Upon the evidence in the case at bar, it appears that " LePage's Liquid Glue " was the name adopted by Brooks and LePage for the light glues manufactured by them, a special word, such as " straw," " carriage," etc., indicating for what especial use the particular light glue was designed, being inserted before the word "glue"; that they manufactured glues under this name, and, at a subsequent period, in 1882, formed the plaintiff corporation, to which they sold their business, and which continued the manufacture of these glues under the same name. The defendant was a member of the corporation, and a director thereof, until February, 1886. He then left it, and shortly after engaged in the manufacture and sale of glue at Gloucester, where the plaintiff's business has always been carried on, using the name " LePage's Improved Liquid Glue " to advertise the article produced by him.

When Brooks and LePage sold their business to the plaintiff, they in express terms sold " the right to use the trade-marks belonging to or in use by said copartnership." When LePage (with Brooks) sold to the corporation, and when he left the corporation, it must be held that the name " LePage's Liquid Glue " was a trade name or trade-mark, and it is not important which term is used, indicating the liquid glue which the plaintiff was manufacturing. The right to use it as such was necessarily an exclusive use, as it was intended thus to distinguish the plaintiff's goods from those of others. As a trade-mark belonging to the corporation, the defendant while an officer thereof had himself sought to obtain registration for it at the United States Patent Office.

We are of opinion, therefore, that the defendant should be enjoined from using the words " LePage's Improved Liquid Glue," or " LePage's Liquid Glue," to describe the article manufactured by him, and from describing the company under whose name he conducts his business as " LePage's Liquid Glue Company," whether with or without any addition thereto.

While the plaintiff has not sought to prevent the defendant from manufacturing glue, we add, in order to avoid misunderstanding, that while the defendant cannot use the words adopted as a trade name for the article manufactured by him, we do not decide that he may not use the words " Liquid Glue," or other appropriate words, to describe his product, or to state in that connection that he is himself the manufacturer of it.

*Decree for the plaintiff.*