LUDWIG & CO. v. CLAVIOLA CO. et al.

(Supreme Court, Appellate Division, First Department. May 5, 1911.)

1. TRADE-MARKS AND TRADE-NAMES (§ 35*)—INFRINGEMENT—NAMES.
    The defendant Ludwig and a partner manufactured and sold pianos bearing the name "Ludwig & Co.," but known to the trade as the "Ludwig" piano, and had perfected a playing device, which was in a separate case and was attached to the outside of the piano. Thereafter the firm assigned to the plaintiff corporation, Ludwig & Co., all the firm's "personal assets, including good will, of every nature and kind," and all their rights, except "all patents relating to automatic piano players, * * * as well as trade-marks or any property of any nature or kind relating" to the firm's business in connection with the manufacture and sale of said automatic piano players. Thereafter defendant continued the firm of "Ludwig & Co." for the manufacture and sale of automatic piano players, and organized a company which manufactured pianos, on the inside of which was placed the automatic player, and which carried the word "Ludwig" in large capitals, and directly above, in small

---

letters, the word "the," and below, in small letters, the words "piano player." *Held*, that the plaintiff company could enjoin defendant from manufacturing or selling pianos under the name "Ludwig," or any name of which the word "Ludwig" formed a part, whether such pianos had interior mechanism or not, and from placing the word "Ludwig," or any name of which the word "Ludwig" formed a part, on any visible part of such instruments, or from using such names in advertising them, but could not enjoin defendant from advertising that a playing mechanism made by him is contained in a particular piano, nor the designation of such mechanism as the "Ludwig Player," provided the name "Ludwig" was not upon any visible part of such pianos.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 39, 40; Dec. Dig. § 35.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 35*)—SALE.

Where a firm has manufactured and sold pianos, which have become known to the trade under a trade-name, such name passes to the buyer or assignee of the firm's assets and good will.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 39, 40; Dec. Dig. § 35.*]

Ingraham, P. J., and Miller, J., dissenting in part.

Appeal from Special Term, New York County.

Action by Ludwig & Co. against the Claviola Company and John H. Ludwig. From an interlocutory judgment in favor of the plaintiff, the defendants appeal; and from a part of the judgment, plaintiff appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

John J. O'Connell, for plaintiff.
Alton B. Parker, for defendants.

McLAUGHLIN, J.   The plaintiff, a manufacturer of pianos and other musical instruments, brought this action to procure a judgment enjoining and restraining the defendants and each of them from making or selling pianos by or under the name of "Ludwig," or any name or designation of which the word "Ludwig" forms a principal part, whether or not the same have an interior playing attachment, from putting such name upon any part of pianos manufactured or sold by them, and for an accounting.  The defendants answered separately, and a trial of the issues thus raised resulted in a judgment in favor of the plaintiff, by which the defendants and each of them—

"are permanently enjoined and restrained from manufacturing, selling, offering for sale, or placing upon the market pianos by or under the name 'Ludwig,' or any name or designation of which the word 'Ludwig' forms a part, whether such pianos have an interior playing mechanism or not, * * * and also enjoining and restraining them from placing or applying the said name, or any name of which the word 'Ludwig' forms a part, upon any part of such pianos, or upon any visible portion of such instruments, * * * and * * * from using such name, or any name of which it forms a part, in advertising such pianos, or on their letter heads, bill heads, or other printed matter; but this injunction shall not extend to advertisements or other printed matter which announce the fact that a playing mechanism made by the defendant John H. Ludwig is contained in a particular piano, nor to the designation of such playing mechanism as the 'Ludwig

player': Provided the name 'Ludwig,' or any name of which the word 'Ludwig' forms a part, does not appear upon any visible part of such piano."

The defendants appeal from the whole of said judgment, and the plaintiff appeals from so much as permits defendants to advertise or designate the playing mechanism made by them as the "Ludwig player." At the trial it appeared that in 1889 the defendant John H. Ludwig and one Charles A. Ericsson entered into a partnership under the name of Ludwig & Co. for the purpose of manufacturing and selling pianos. The business of the firm was very successful, and between its formation and April, 1902, several thousand pianos had been manufactured and sold by it. Such pianos had upon the fall board the name "Ludwig & Co.," but were known to the trade as the "Ludwig" piano. In April, 1902, the plaintiff, a domestic corporation, was formed with a capital stock of $400,000; Ludwig and Ericsson assigning and transferring to it all the business and assets of the firm in return for the bulk of the stock. For some time prior to the formation of the corporation the partnership had been endeavoring to perfect some mechanism or device which could be put inside of a piano and automatically play it. Up to this time its efforts had been unsuccessful. It had, however, perfected a device, called the "Claviola," which was in a separate case, and, when used, had to be attached to the outside of a piano. In the bill of sale to the corporation the business of making an automatic piano player was reserved by the firm. So much of the bill of sale as is material to the determination of the question here under review is as follows:

"We, John H. Ludwig and Charles A. Ericsson, copartners in business under the firm name and style of Ludwig & Co., in consideration of  *  *  * hereby so bargain, sell, grant, convey, transfer, and deliver unto Ludwig & Co., a corporation organized under the laws of the state of New York, its successors and assigns, all the personal assets, including good will, of every nature and kind, of the copartnership of Ludwig & Co. wherever the same may be, and in whatsoever form or condition, and all rights of the parties of the first part in and to the same, saving and excepting therefrom, however, all patents relating to automatic piano players, all machinery specially used for that purpose, material on hand, manufactured players, as well as names, trade-marks, or any property of any nature or kind relating specially to the department of the business of the parties of the first part in connection with the manufacture and sale of said automatic piano players."

Within a few days after the corporation was formed, Ludwig and Ericsson entered into a written agreement by which the firm of Ludwig & Co. was continued for the purpose of manufacturing and selling automatic piano players, or for acquiring and exploiting or disposing of patents relating thereto; and at the same time they obtained the written consent of the corporation to apply the name "Ludwig" and use the same as the name of such mechanism. The firm continued to manufacture the Claviola, and also to endeavor to perfect a device that could be put on the inside of a piano, until 1904, when Ericsson withdrew from the firm, transferring to Ludwig all his interest therein, and thereafter Ludwig continued the same business until January, 1906, at which time he had succeeded in perfecting an automatic piano player which could be placed on the inside of a piano. From the organization of the plaintiff until January, 1906, Ludwig was its presi-

dent and a director; but at the annual meeting of stockholders held that month he failed of re-election to either office. Having failed of re-election, he organized the defendant, the Claviola Company, a domestic corporation, taking the larger part of the capital stock, at once became its president, and since has acted as such. Immediately upon the organization of the Claviola Company, it commenced the manufacture and sale of pianos, on the inside of which was placed the automatic player perfected by Ludwig. Upon the fall board of such pianos it put the word "Ludwig" in large capital type, directly above which, in small letters, was the word "the," and below, in small letters, the words, "piano player." It also commenced to use numbers on its pianos corresponding substantially to those then used by the plaintiff.

[1] The plaintiff contends that the defendants have no right to use the word "Ludwig" on pianos made by them, since Ludwig parted with such right when he and Ericsson transferred to the corporation the partnership business, so far as it related to the sale and manufacture of pianos, together with the good will, trade-name, etc. The defendants contend that Ludwig has the right, under the exception contained in the bill of sale, to use the word "Ludwig" in connection with any automatic piano player, and as it is now being used on its pianos.

I am of the opinion the plaintiff's contention is correct. When Ludwig and Ericsson transferred to the plaintiff the right to make and sell pianos, including the good will of the firm, that carried with it the exclusive right to use the name by which pianos theretofore sold by the firm were generally known; i. e., "Ludwig piano," or the "Ludwig & Co. piano." This fact was recognized by Ludwig himself, because, after the organization of the plaintiff, and while acting as its president, he dropped the words "& Co.," and put upon the fall board the words "Ludwig, New York." He also recognized the fact that he had no right to use the word "Ludwig," even upon his automatic player, or at least there was sufficient doubt in his mind on that subject to induce him, or his firm, to obtain from the corporation its consent to such use.

[2] The word "Ludwig," at the time of the bill of sale was made was, and now is, in effect, a trade-name by which the particular type of piano manufactured by the plaintiff is known. That trade-name was part of the good will sold to this plaintiff. Slater v. Slater, 175 N. Y. 143, 67 N. E. 224, 61 L. R. A. 796, 96 Am. St. Rep. 605. To permit the defendants to use that name in the manner in which they are using it, or upon the outside of a piano, is to deprive the plaintiff of something it purchased, as well as to permit the defendants to resort to unfair competition in trade. To call the instrument which the defendants are selling a piano player is a misnomer. It is nothing more or less than a piano with an interior automatic playing attachment. This the defendants recognized themselves, because in a circular issued by them the statement is made that:

"Manufacturers who retail can make special arrangements with John H. Ludwig for the name 'Ludwig' for automatic piano player purposes for territory unoccupied."

Ludwig has a right to use his name on the automatic device, and this the judgment permits him to do; but he cannot use it on a piano

equipped with the device, because such use would lead the public to believe the piano itself was a Ludwig piano. Croft v. Day, 7 Beav. 84; Cement Co. v. Le Page, 147 Mass. 206, 17 N. E. 304, 9 Am. St. Rep. 685; Higgins Co. v. H. S. Co., 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769. "It is well settled," says Judge Andrews, in H. Co. v. H. S. Co., supra, "that an exclusive right may be acquired in the name in which a business has been carried on, whether the name of a partnership or of an individual, and it will be protected against infringement by another who assumes it for the purposes of deception, or even when innocently used without right, to the detriment of another; and this right, which is in the nature of a right to a trade-mark may be sold or assigned." There are numerous authorities to the effect that an individual may be restrained from using his own name, where such name constitutes a trade-name and has passed under a sale of good will.

In Russia Cement Co. v. Le Page, supra, Le Page and another formed a partnership under the name of the Russia Cement Company, and it for some time manufactured and sold glue by the name of "Le Page's glue." A corporation was thereafter formed, to which the partnership transferred its assets and good will; Le Page becoming one of its officers. Some time thereafter he sold all of his stock in the corporation and severed his relations with it, and then commenced to manufacture and sell glue under the name of "Le Page improved liquid glue." It was held that the Cement Company was entitled to a judgment permanently enjoining and restraining his doing so. The court, after referring to the rule that a person has a right to use his own name, said:

"While this is the general rule, it is also true that one may so sell or part with the right to use his own name as a description or designation of a manufactured article as to deprive himself of the right to use it as such and confer this right upon another. A name used as an adjective of description is not necessarily understood by the public as any assertion that the person whose name is used is the maker of the article. One who has carried on a business under a trade-name, and sold a particular article in such a manner by the use of his name as a trade-mark or a trade-name as to cause the business or the article to become known or established in favor under such name, may sell or assign such trade-name or trade-mark when he sells the business or manufacture, and by such sale or assignment conclude himself from the further use of it in a similar way. * * * A person may be enjoined, therefore, from using his own name as a description of an article of his own manufacture, and from selling the article under that particular name when he has parted with the right thus to apply it."

Le Page, being enjoined from selling the glue under his own name, then caused to be incorporated the Le Page Company, he or his wife and counsel taking substantially all of the capital stock, and the corporation then commenced to manufacture glue, which it sold by the name of "glue made by the Le Page Company." It was held this was a violation of the rights acquired by the original corporation to the use of the name "Le Page" and an injunction was granted. Le Page Co. v. Russia Cement Co., 51 Fed. 941, 2 C. C. A. 555, 17 L. R. A. 354. During the course of the opinion, which was delivered by Judge Putnam, he said:

"It does not appear that either the shape of the packages, the color of the labels, or the peculiar adornments put upon them, or any arbitrary designations, form essential parts of what was left behind him by Le Page when he withdrew from the plaintiff corporation, or of what was transferred to it by the partnership, and as to all these the Russia Cement Company, so far as the case shows, reserved the right to modify and change, as the tastes of the public or the supposed attractiveness of its packages may from time to time require. The essential thing is its right to inform the public that it is in the exclusive possession of all the advantages coming to it as the legitimate successor of the original formulator of 'Le Page's glue,' and is alone entitled to put on the market that product supposed to be composed or manufactured with special skill and known to come from the original and long-established concern."

See, also, Lamb Knit Goods Co. v. Lamb G. & M. Co., 120 Mich. 159, 78 N. W. 1072, 44 L. R. A. 841; Brass & Iron Works v. Payne, 50 Ohio St. 115, 33 N. E. 88, 19 L. R. A. 82; Symond v. Jones, 82 Me. 302, 19 Atl. 820, 8 L. R. A. 570, 17 Am. St. Rep. 485; Brown Chemical Co. v. Myer, 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247, and Shaver v. Shaver, 54 Iowa, 208, 6 N. W. 188, 37 Am. Rep. 194.

But the judgment does not prevent Ludwig using his own name, except in such a way as to deprive the plaintiff of something it purchased. He is permitted to use it in advertising the fact that he has an automatic piano player which is contained in a particular piano, or to designate such playing mechanism as the "Ludwig player." He must not use the word "Ludwig," or any name of which it forms a part, upon a piano, because the plaintiff has the right to inform the public that it is the exclusive manufacturer of the Ludwig piano. This right it purchased from Ludwig and Ericsson, and defendants cannot be permitted to destroy or impair the same in any respect.

It follows that the judgment appealed from should be affirmed, with costs to plaintiff and against defendants.

SCOTT and DOWLING, JJ., concur.

INGRAHAM, P. J. I concur in the affirmance of this order, so far as it enjoins the defendants from selling pianos under the name of "Ludwig"; but I think the judgment is too broad in restraining the defendants from using the name "Ludwig" as the manufacturer of a piano player or playing mechanism, whether this playing mechanism forms a part of the piano or not. When the firm of Ludwig & Ericsson assigned and transferred to the plaintiff corporation the personal assets, including the good will, of the partnership of Ludwig & Co., it excepted and reserved from that transfer all patents relating to automatic piano players, all machinery used for that purpose, materials on hand, manufactured players, as well as names, trade-marks, or any property of any nature or kind relating specially to the department of the business of Ludwig & Co., in connection with the manufacture and sale of said automatic piano players. The evidence is undisputed that prior to the time this assignment was made the assignors had been engaged in endeavoring to invent and perfect an automatic piano player, both as a separate instrument for a piano and also as a mechanism which could be placed within the piano, although at the time of the

transfer the only practical piano player that had been perfected was a separate instrument from the piano itself. During the time that the defendant Ludwig was connected with the plaintiff as a director and officer, these efforts had been continued, though up to the time that Ludwig's connection with the plaintiff ended an interior mechanism had not been perfected. It seems to me, however, that the firm of Ludwig & Co. obtained the right to use the name "Ludwig" upon any mechanism that they had invented or should hereafter invent that could be used as a mechanical piano player, as distinguished from a piano to be played upon by the individual; and when Ludwig had actually perfected a piano player, the mechanism of which was to be placed within the piano, I think he had a right to sell such a piano player as the "Ludwig piano player," provided he clearly indicated that it was the piano player that was manufactured by Ludwig, and not the piano itself.

Undoubtedly the means adopted by the defendant in placing upon the pianos sold by him the name "Ludwig" in large letters, with the addition of "piano player" in small and inconspicuous letters, was a violation of the contract, as tending to deceive purchasers into supposing that the piano sold was the Ludwig piano, and the adoption by the defendant of the method employed in selling the pianos, including the playing mechanism, should be enjoined. But, as the defendant Ludwig had reserved the right to manufacture piano players under the name of the "Ludwig piano player," I think he was entitled to place upon the outside of the instrument sold by him the fact that the piano mechanism inclosed in the piano sold was manufactured by Ludwig & Co., or its successor, the Claviola Company. There was no agreement by Ludwig & Co., in the transfer to the plaintiff, which at all restrained Ludwig & Co., from continuing the manufacture of pianos, and the defendant Ludwig had the right to use his own name in that business after the transfer to the plaintiff. He had no right, however, to sell the pianos that he should manufacture as the Ludwig piano; but I think he had the right to sell a piano player, whether it was contained within the piano itself or was a separate instrument, as the Ludwig piano player, and to place upon the instrument, which included a piano and a piano player, the name of the "Ludwig piano player."

In Russia Cement Co. v. Le Page, 147 Mass. 206, 17 N. E. 304, 9 Am. St. Rep. 685, the case relied on in the prevailing opinion, the opinion concludes as follows:

"While the plaintiff has not sought to prevent the defendant from manufacturing glue, we add, in order to avoid misunderstanding, that, while the defendant cannot use the words adopted as a trade-name for the article manufactured by him, we do not decide that he may not use the words 'liquid glue,' or other appropriate words, to describe his product, or to state in that connection that he is himself the manufacturer of it."

In that case there was no reservation by the assignor as to his right to use his name, as in this case, and in consequence of the character of the article manufactured it was apparent that even the manufacture of liquid glue under the name of "Le Page" would of itself seriously affect the business that was transferred. And this fact may be considered in applying the subsequent decision of the United States Circuit

Court in the case of Le Page v. Russia Cement Co., 51 Fed. 941, 2 C. C. A. 555, 17 L. R. A. 354.

I think, therefore, that the order should be modified, so that the defendants should not be restrained from selling a piano including a playing mechanism under the name of the "Ludwig piano player," and this could be provided for by striking out the last proviso in the third clause of the interlocutory judgment, the words "placing or applying the said name, or any name of which the word 'Ludwig' forms a part, upon any part of such pianos, or upon any visible portion of such instruments," and also striking out in the first clause of the interlocutory judgment the words "whether such pianos have an interior playing mechanism or not, and in like manner enjoined and restrained from causing the same to be done."

I think, therefore, the interlocutory judgment should be amended, as before indicated, and, as so amended, affirmed, without costs to either party.

MILLER, J., concurs.