PHILIP HILTON, complainant-respondent,

*v.*

JOSEPH HILTON, defendant-appellant.

[Decided June 17th, 1918.]

1. The right of a man to use his own name in his own business is part of the natural and inalienable rights guaranteed by our constitution without which the right to acquire, possess and protect property would be of little worth. Even in a case of unfair competition, the courts go no further than to restrain the use of a name except when so marked as to distinguish it from a competitor, and this exception amounts to allowing the wrongdoer to continue the use of his own name when it is so marked.

2. The remedy by injunction in a case of unfair competition is a protective remedy intended to protect the complainant in his property rights, not punitive to punish wrong doing.

3. When partners dissolve and put their agreement in writing, that writing measures their rights and obligations.

4. In an agreement of dissolution between partners, there was a sale of the good will of the business, but no agreement by the retiring partner not to engage in business.—*Held*, that the retiring partner might carry on a rival business wherever he chose, and might push his business as any stranger or outsider might, even though this interferes with the business he has sold. *Newark Coal Co. v. Spangler, 54 N. J. Eq. 354,* approved.

5. The vendor of the good will of a business who has not covenanted or agreed not to compete, may seek for trade by any honest method, including public advertisement or private advertisement, among those who were not customers of the old business, but may not specially solicit the trade of those who were customers of the old business, and he may serve all who come of their own motion.

---

On appeal from a decree advised by Vice-Chancellor Lane, reported *ante p. 149*.

*Mr. John R. Hardin,* for the complainant-respondent.

*Mr. Robert H. McCarter (Selick J. Mindes* on the brief), for the defendant-appellant.

The opinion of the court was delivered by

SWAYZE, J.

The bill prays that the defendant be

"restrained from using the name 'Hilton's' or 'Hilton' alone or in such manner as to lead or induce the public to believe that the goods manufactured or sold by him are manufactured or sold by complainant and that the business conducted by defendant is the same as or a part of the business conducted by complainant, from using any emblem or device resembling the trade emblem of complainant in any way in his business and from conducting his business so as to deceive the public and induce it to believe that the goods manufactured or sold by defendant were manufactured or sold by complainant and that the business conducted by defendant is the same as or a part of the business conducted by complainant."

The evidence entitled the complainant to the relief prayed for. The learned vice-chancellor, however, went further and enjoined the defendant from using the name Hilton either alone or in association with other word or words for any purpose whatsoever in any clothing business operated or conducted directly or indirectly by the defendant, competitive with the clothing business operated or conducted by the complainant trading under the name and style of The Hilton Company, and particularly from using the word Hilton's or Hilton either alone or in association with other word or words to describe or designate any retail clothing store or stores or the clothing therein sold or the business therein operated or conducted, now or hereafter operated or conducted, directly or indirectly, by the defendant in any city or cities in which the complainant, trading under the name and style of The Hilton Company now operates or conducts a retail clothing business.

The effect of this injunction is to preclude the defendant from using his own name in the clothing business in any city where the complainant conducts a retail clothing business. That this was meant to be its scope is shown by the respondent's defence to the decree, both orally and in his brief.

The right of a man to use his own name in his own business is part of the natural and inalienable rights guaranteed by the very

first clause of our constitution, without which the right to acquire, possess and protect property would be of little worth. Although the right is not safeguarded in England by any constitutional guarantee, it has found careful protection in the courts of justice. Of the numerous cases of unfair competition and fraud to be found in the reports, we doubt if a single case can be found where as broad an injunction as the present has been granted in a case of unfair or fraudulent trade where, as here, there has been no contract or covenant restraining a man's business activities. Even in the *Rogers Case* the injunction only went so far as to restrain the defendant from using his own name unless he stamped upon the goods the words, "not the original Rogers" or "not connected with the original Rogers." This exception, of course, amounted to allowing the defendant in that case, notwithstanding his previous fraudulent conduct, to continue the use of his own name if he would brand the goods as stated.

At least three reasons have moved the courts to this limitation of the restraint upon a man's use of his own name—*first,* the constitutional rights already stated; *second,* the public interest in having all citizens free to labor in the vocation to which they have been trained, with which they are familiar, or to which they are adapted—a consideration which has led the courts so often to declare even contracts void as in restraint of trade; *third,* the fact that the remedy by injunction is a protective remedy intended to protect the complainant in his property rights, not a punitive remedy intended to punish the defendant for his wrongdoing. In this present case there is a fourth reason. The parties when they dissolved partnership, put their agreement in writing and that writing measures their rights and obligations. At that time, under such an agreement as they made, the defendant had the right, as had been recently decided by this court in *Snyder Pasteurized Milk Co.* v. *Burton, 80 N. J. Eq. 185,* to engage in a competing business. The complainant must be assumed to know the law and to have known that such was the effect of the agreement. He was, moreover, advised by competent counsel. In this situation we cannot do otherwise than hold that the parties contemplated that the defendant might use

his own name in the clothing business. He must, of course, refrain from representing his business to be that of the complainant and from palming off his goods as the goods of the complainant. The present injunction in its full scope cannot be sustained because of defendant's unfair trading. Apparently an injunction exactly in accord with the prayer of this bill would suffice for the complainant's protection.

There we might leave the case, but for the fact that in the dissolution of the partnership the defendant transferred to the complainant, along with the other assets, "all the name and good will of said business." The only name mentioned in the transfer is The Hilton Company, and the transfer of this name would not enlarge the complainant's right to the name "Hilton" or "Hilton's." If the name only had been transferred the argument would be irresistible that the names "Hilton" and "Hilton's" were omitted advisedly. The name, however, is not all that is transferred; the "good will" is included. We must, therefore, determine, whether the complainant's rights are thereby enlarged. The fact that the bill does not contain any prayer for the protection of the good will, or prayer for general relief, does not shut us off from the inquiry. The bill was filed in 1917. By the new chancery rules (*P. L. 1915 p. 194 rule 47*) relief other than that prayed for may be given without a prayer for general relief. The bill sets up the transfer and the answer admits it so far as material to the present question. What rights then has the complainant by virtue of the transfer to him of the good will of the business? This depends on how good will is defined, and how much the words connote. Probably no one at this day would adopt the narrow definition of Lord Eldon. Business methods change with changing years and with the expansion of business the meaning of business terms expands. The definition of Vice-Chancellor Wood, afterward Lord Hatherley, in *Churton* v. *Douglas, 28 L. J. Ch. 841,* is broad enough for our present purpose and has in effect been adopted in later cases, which have been approved and followed by us. *Snyder Pasteurized Milk Co.* v. *Burton, 80 N. J. Eq. 185.* "Good will must mean every advantage—affirmative advantage, if I may so express it, as con-

trasted with the negative advantage of the vendor not carrying on
the business himself—that has been acquired by the old firm by
carrying on its business, everything connected with the premises,
or the name of the firm, and everything connected with or carry-
ing with it the benefit of the business." The distinction drawn
by the vice-chancellor between affirmative and negative advantage,
as he calls it, is important. It was then, and apparently always
has been, recognized that the sale of good will without more
did not prevent the vendor from engaging in business in com-
petition with the vendee. If the vendee desired to avoid that,
he must require a contract not to engage in competition. This
rule was so plain that it was taken for granted in this court
(*Richardson* v. *Peacock, 33 N. J. Eq.* 597) and stated by Vice-
Chancellor Emery with his well-known care and accuracy in
*Newark Coal Co.* v. *Spangler, 54 N. J. Eq. 354,* as follows: "The
vendor of a good will who has not expressly restricted himself
against carrying on the business, being permitted by law to carry
on a rival business wherever he chooses, may push his business
as any stranger or outsider might, even though this does inter-
fere with the business he has sold, and the real question, there-
fore, is narrowed down to this: In thus pushing his rival busi-
ness, what acts, if any, must the vendor be restrained from?"
It was always conceded that the vendor in conducting the rival
business might make his business known by the usual general
appeals by public advertisement to the public generally. *Johnson*
v. *Helleley, 2 De G. J. & S. 446; 34 L. J. Ch. 179; Hall* v. *Bar-
rows, 33 L. J. Ch. 204; Labouchere* v. *Dawson, 41 L. J. Ch.
427.* It was at one time contended that the vendor might
go farther and solicit personally or by mail, by traveling men,
or any other way. It was finally settled that such special
solicitation would be restrained. The English cases are set
forth by Vice-Chancellor Emery in *Newark Coal Co.* v. *Spang-
ler,* above cited, and the matter has been put at rest by the de-
cision of this court in *Snyder Pasteurized Milk Co.* v. *Burton,
80 N. J. Eq. 185.* We there said: "The defendant having made
no express covenant, may engage in a competing business." We
there restrained the defendant from soliciting customers of the

former business, the good will of which he had sold. It is gratifying to know that the English rule adopted by us has the support not only of reason but of the weight of authority in other jurisdictions. The more recent cases are collected in a note to *Von Bremen* v. *Macmonnies, 200 N. Y. 41; 21 Ann. Cas. 423.* The New York court of appeals holds to our rule. The supreme court of Massachusetts takes a different view. Cases are collected in a note to *Foss* v. *Roby, 195 Mass. 292; 11 Ann. Cas. 571,* but the cases cited in that note show that the great weight of authority is with our rule. On the one hand then, the vendor having the right to conduct a rival business may from the necessity of the case seek for trade by any honest method including public advertisement or private advertisement among those who were not customers of the old business, but he may not specially solicit the trade of those who were customers of the old business. The question still remains whether he may deal with the old customers, who may perhaps be attracted by their knowledge, from advertisement or otherwise, that he is in business. This question was left in doubt by what Justice Dixon said in *Richardson* v. *Peacock.* Sir George Jessel in *Ginesi* v. *Cooper, L. R. 14 Ch. Div. 596; 49 L. J. Ch. 601,* enjoined a vendor who had sold his good will from dealing with the old customers and vindicated his action in his usual vigorous style. Afterward in *Leggott* v. *Barrett, L. R. 15 Ch. Div. 306; 51 L. J. Ch. 90,* an injunction granted by him in accordance with *Ginesi* v. *Cooper* came before the court of appeals and his order was reversed. Lord-Justice Brett said: "The truth is, that to enjoin a man, or to prevent him by means of damages when he does it, against dealing with people whom he has not solicited, is not only to enjoin him, but to enjoin them, for it prevents them from having the liberty which everybody in the country might have of dealing with whom they like. If they are induced by his solicitations, that is a different thing; but it seems to me that it would be quite wrong to imply any contracts that he will not deal with people who come of their own accord to deal, even though they were former customers." The judges agreed that there was no authority for the extension of the relief attempted by the master of the rolls.

The argument is unanswerable. It cannot be that every customer of a great department store, for instance, must be restricted in his choice of a place in which to trade merely because partners dissolve and one sells the good will to the other. The necessary corollary of the right to do business is the right to serve all who come of their own motion. Moreover, the rules of law must be practical, and it would be quite impossible for the proprietor even of a small business to be personally present in all parts of his establishment prepared to turn away all the old customers, and of course no clerk can be supposed to know them even if the proprietor can be.

The right to make known that one is in business by advertising addressed to the public generally, is a necessary concomitant of the right to do business, without which that right would be hardly more than nominal. The reason for making a difference between such advertising and special solicitation is that the former is public and open to all, the latter is private and secret in a sense, and the vendor of good will has the advantage of knowing the customers, and, if permitted, could by reason of that knowledge detract from the value of the good will he had sold.

No relief is open to the complainant by reason of his purchase of good will except an injunction against soliciting customers of the old business. No such solicitation was proved, no issue was made of it. In the present state of the case, at any rate, no relief can be granted on that score.

The decree must be modified, and to that end the record remitted in order that a decree may be entered according to the prayer of the bill. No costs will be allowed in this court. The respondent is entitled to costs in the court of chancery since he gets the relief he prayed for.

*For affirmance*—None.

*For reversal*—None.

*For modification*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, TAYLOR, GARDNER—10.