ROBERT BURNS vs. WILLIAM J. BURNS INTERNATIONAL DETECTIVE
AGENCY, INC.

Suffolk. January 12, 1920. — May 18, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, PIERCE,
CARROLL, & JENNEY, JJ.

*Equity Jurisdiction,* To enjoin use of trade name. *Trade Name. Corporation.*

In a suit by one Robert Burns to restrain a corporation named William J. Burns
International Detective Agency, Inc., from using the name "Burns Detective
Bureau," "Burns Detective Agency" or "Burns Agency," there was evidence
that the plaintiff was licensed by the city of Cambridge in 1909 as a private
detective and in that year opened an office in Boston; that in January, 1911,
he registered the name "Burns Detective Bureau" and thereafter until the
present suit continued the detective business under that name and advertised
and was listed under that name in the Boston city directory and the Boston
telephone directory; that from 1903 to 1909 one William J. Burns was engaged
in secret service work for the federal government and established a national
reputation as a detective; that in 1909 he engaged in business privately and
organized the defendant corporation, its name always containing the sur-
name Burns but being changed twice; that in February, 1911, the defendant
opened an office in Boston and was listed in the telephone directory as "Burns
William J. National Detective Agency, Inc. The," and "Burns William J.
International Detective Agency Inc. The" and also appeared in the Boston
city directory for 1913 as "Burns Detective Agency, The William J. National,
Inc." and in the Boston telephone directory in 1915 and 1916 as "Burns Detec-
tive Agency, The William J. International Inc.;" that the form of listing in the
telephone directory of 1915 was requested by the defendant in order that its
name might catch the eye of the public before it rested on the plaintiff's name.
There was no evidence that the change in the listing was made for the purpose
of inducing persons to do business with the defendant under the belief that
they were doing business with the plaintiff. *Held,* that

(1) William J. Burns had a right to use his own name in his business as a
detective and to incorporate and carry on a detective agency with the use of
that name;

(2) The likelihood that the mere alphabetical arrangement in the telephone
directory would mislead was not a sufficient reason for issuing an injunction,
where it did not appear that the defendant attempted to hold itself out as the
plaintiff, or to deceive the plaintiff's patrons;

(3) The bill should be dismissed.

BILL IN EQUITY, filed in the Supreme Judicial Court on April
18, 1915, alleging that from the year 1909 to the date of filing the

bill the plaintiff had continuously used the names "Burns Agency," "Burns Detective Agency," and "Burns Detective Bureau," and that on January 27, 1911, he registered with the Secretary of State for the Commonwealth the name of "Burns Detective Bureau," and praying that the defendant be restrained from using any of those names.

The defendant filed a demurrer and an answer. The demurrer was heard by *Braley, J.,* and was overruled, and the suit was referred to a master. Findings of the master as to the origin of the defendant were as follows: "The defendant was incorporated in the State of New York, December 30, 1909, under the name of 'Burns & Sheridan National Detective Agency,' to carry on the business of private detective. On March 20, 1911, its name was changed to 'The William J. Burns National Detective Agency, Inc.' and on October 15, 1913, to its present name. In February, 1911, the defendant opened an office in Boston. It has about twenty-eight offices distributed throughout the larger cities of the United States and in Montreal, London and Paris. The New York, Philadelphia, Pittsburg, Chicago, and St. Louis offices, and perhaps one or two others, were opened before 1911. Since the incorporation of the defendant it has been entitled to the exclusive services of William J. Burns, who is head of its agencies. Prior to 1903 Burns was an operative of the United States Secret Service of the Treasury Department, being one of more than fifty operatives who were subject to assignment by the Chief of the Service. In 1903 he was transferred to the Interior Department, where he remained for about three years, serving at various times as Special Agent of the Land Office, Special Agent of the Interior Department, and Special Agent of the Indian Division. While connected with the Interior Department he engaged in the 'land fraud' investigations in California, Oregon, and other parts of the country. In 1906 Burns was given leave of absence from the government service, and until 1909 engaged in the 'graft investigation' in San Francisco. In 1909 (about October) he, with others, opened an office in New York City for detective business under the name of 'Burns & Sheridan National Detective Agency.' Shortly thereafter the business was incorporated under that name, as above stated."

Other findings of the master are described in the opinion.

The suit came on to be heard before *Jenney,* J., upon exceptions by both parties to the master's report and was reserved by him, upon the pleadings, the master's report and the exceptions thereto, for determination by this court.

The case was argued at the bar in January, 1920, before *Rugg,* C. J., *Braley, De Courcy, Carroll, & Jenney,* JJ., and afterwards was submitted on briefs to all the Justices.

*P. H. Kelley,* for the defendant.

*H. W. Ogden,* for the plaintiff.

CARROLL, J.  This is a suit in equity to restrain the defendant from using the name Burns Detective Bureau, Burns Detective Agency or Burns Agency.  The master found that the plaintiff, in November, 1909, was licensed as a private detective by the city of Cambridge where he lived, and in that year opened an office in Boston, which he still maintains.  He did business principally in New England.  On January 27, 1911, he filed with the Secretary of the Commonwealth a form of advertisement, "Burns Detective Bureau," and a certificate of record was issued.  From that time until the present he used the name "Burns Detective Bureau" on his signs and in the Boston city directory.  He was listed in the Boston telephone directory as "Burns Detective Bureau," and under this name advertised in the newspapers and other publications.  Since 1911 he has continued the detective business, advertising under the name of "Burns Detective Bureau," and was known among those interested in the private detective business in the vicinity of Boston.  The defendant opened an office in Boston in February, 1911.  It had offices distributed throughout the larger cities of the United States, and in Montreal, London and Paris, and is entitled to the exclusive service of William J. Burns.  In October, 1913, its name was changed from "The William J. Burns National Detective Agency, Inc." to its present one.  It appeared in the Boston directory and in the telephone directory as "Burns William J. National Detective Agency Inc. The," and "Burns William J. International Detective Agency Inc. The."  It also appeared in the business listing of the Boston city directory for 1913 as "Burns Detective Agency The William J. National, Inc." and in the telephone directory for Boston and vicinity in 1915 and 1916 as "Burns Detective Agency, The William J. International Inc."

The master found that the use of the names Burns Detective Bureau, Burns Detective Agency, and Burns Agency by the defendant, without limiting words or words of explanation, would be likely to confuse the defendant's agency with the plaintiff's, and induce persons to do business with the defendant under the belief they were dealing with the plaintiff. But he also found that the defendant did not advertise nor cause its name to appear in any written or printed publication as "Burns Detective Bureau" and did not use the words "Burns Detective Agency" or "Burns Agency" without limiting or explanatory words. He made this specific finding: "I find, however, that the arrangement of the name 'Burns Detective Agency, The William J. International, Inc.' is more likely to induce persons to do business with the defendant under the belief that they are doing business with the plaintiff, since this arrangement takes the words 'William J.' from the emphatic position at the beginning of the name and places in the emphatic position the words 'Burns Detective Agency,' and since such arrangement of words gives precedence to the defendant's name over the plaintiff's in alphabetical listing in the telephone directory or elsewhere." He further found that this form of listing in the telephone directory of 1915 was requested by the defendant in order that "the defendant's name might catch the eye of the public before it rested on the plaintiff's name." But there was no evidence that the defendant made either of the changes in its name, or secured the change in its listing in the telephone directory for Boston and vicinity, for the purpose of inducing persons to do business with it, under the belief that they were doing business with the plaintiff.

William J. Burns had the right to use his own name in his business as a detective, to incorporate and carry on a detective agency. "Every one has the absolute right to use his own name honestly in his own business for the purpose of advertising it, even though he may thereby incidentally interfere with and injure the business of another having the same name. In such case the inconvenience or loss to which those having a common right to it are subjected is *damnum absque injuria.* But although he may thus use his name, he cannot resort to any artifice or do any act calculated to mislead the public as to the identity of the business firm or establishment, or of the article produced by them,

and thus produce injury to the other beyond that which results from the similarity of names." *Russia Cement Co.* v. *LePage,* 147 Mass. 206, 208, 209.   The same principle was stated by Chief Justice Gray in *Gilman* v. *Hunnewell,* 122 Mass. 139, 148: "A person may have a right in his own name as a trade-mark, as against a person of a different name. . . .   But he cannot have such a right as against another person of the same name, unless the defendant used a form of stamp or label so like that used by the plaintiff as to represent that the defendant's goods are of the plaintiff's manufacture."   To the same point are *C. H. Batchelder & Co. Inc.* v. *Batchelder,* 220 Mass. 42, *Kaufman* v. *Kaufman,* 223 Mass. 104.   See also, *Howe Scale Co.* v. *Wyckoff, Seamans & Benedict,* 198 U. S. 118, 140; *L. E. Waterman Co.* v. *Modern Pen Co.* 235 U. S. 88, 94; *Stix, Baer & Fuller Dry Goods Co.* v. *American Piano Co.* 127 C. C. A. 639; *Chickering* v. *Chickering & Sons,* 131 C. C. A. 538; *Knabe Brothers Co.* v. *American Piano Co.* 143 C. C. A. 325; *Wright Restaurant Co.* v. *Wright,* 74 Wash. 230.

In the light of these principles the plaintiff has not shown that he is entitled to equitable relief.   The only use of the defendant's name that was likely to cause anything more than incidental confusion of the plaintiff's agency with the defendant's, was in the arrangement in the telephone directory, where the words "Burns Detective Agency" preceded the name "William J."   Even if this finding were correct, the defendant practised no fraud in the use of its name; it did not attempt by any artifice to deceive the public or induce the plaintiff's patrons to deal with it upon the supposition that they were dealing with the plaintiff, and there was no evidence that the change in the defendant's name or in the telephone directory was made for the purpose of misleading the plaintiff's customers.   Although the plaintiff had an office in Boston two years before the defendant entered the field, and was entitled by priority of use to the name "Burns Detective Bureau," there is nothing in the master's report to show (to quote the words of Mr. Justice Holmes in *L. E. Waterman Co.* v. *Modern Pen Co. supra*) that "the profit of the confusion is known to and, if that be material, is intended by" the defendant.   In fact, the master finds specifically that the defendant did not secure the change in the listing in the telephone directory for the purpose of deceiving the plaintiff's patrons.

There was no evidence that the defendant had a place of business in Boston prior to January, 1911; but William J. Burns then had a national, and to some extent an international, reputation as a detective and we must assume in the absence of evidence to the contrary that the defendant did not intrude itself into the plaintiff's field to trade on his reputation in order to deprive him of his business, or to deceive his patrons. There being no evidence of any attempt by the defendant to hold itself out as the plaintiff or appropriate his business, the likelihood that the mere alphabetical arrangement in the telephone directory would mislead is not a sufficient reason why an injunction should issue. The arrangement was not of such a character as to impose upon the public or on the ordinary observer, when using such reasonable observation and attention as is to be expected. "Purchasers may be mistaken, but they are not deceived by false representations, and equity will not enjoin against telling the truth. . . . A court of equity will not interfere when ordinary attention by the purchaser of the article would enable him at once to discriminate the one from the other. . . . Even in the case of a valid trade-mark, the similarity of brands must be such as to mislead the ordinary observer." *Howe Scale Co.* v. *Wyckoff, Seamans & Benedict, supra,* at page 140. In consulting a telephone directory the names of more than one person of the same surname, who are members of the same profession or engaged in similar kinds of business, are not infrequently found, and the fact that one name first catches the eye does not ordinarily excuse further attention. Some degree of discrimination must be used in seeking information from such a source, if mistakes are to be prevented, and with ordinary discrimination it could easily have been discovered that the Burns Detective Agency conducted by the William J. Burns Company was not the Burns Detective Bureau carried on by Robert Burns.

We are unable to distinguish the case at bar from *International Trust Co.* v. *International Loan & Trust Co.* 153 Mass. 271, 277, 278, where it is stated that the "International Loan and Trust Company of Kansas City, Mo." could not be, as a matter of law, mistaken by rational people for the "International Trust Company": "It is not sufficient that some person might possibly be misled, but the similarity must be such that 'any person, with such reasonable care and observation as the public generally are

capable of using and may be expected to exercise, would mistake the one for the other.'"

There was some evidence tending to show a slight diversion of business, but one seems to have gained and lost nearly as much as the other, and what confusion there was in the mail was shown to be trifling and could hardly be said to have been occasioned by the listing in the telephone book. From the facts reported, we see no reason why an injunction should issue.

*Bill dismissed.*