### GOIDL v. ADVANCE NECKWEAR CO., Inc., et al.

#### No. 3402.

Court of Civil Appeals of Texas. El Paso.
Nov. 5, 1936.

Rehearing Denied Nov. 25, 1936.

George O. Wilson and E. M. Reichman, both of Dallas, for appellant.

Henry Feld and Geo. W. Hutchison, both of Dallas, for appellees.

PELPHREY, Chief Justice.

The granting of the temporary writ of injunction in this case was before the Dallas Court of Civil Appeals, see Advance Neckwear Co., Inc., et al. v. Goidl, 77 S.W. (2d) 598, and reference is here made to that opinion for the facts upon which appellant depends and the relief sought by him.

Upon a trial upon the merits the jury found that appellant had built up a reputation as a wholesaler of neckwear under the trade-name of Goidl Neckwear Manufacturing Company; that the Advance Neckwear Company, together with Arthur Goidl and Johanna Goidl, had adopted and combined to use the names Arthur Goidl Neckwear Manufacturing Company and Arthur Goidl Neckwear Manufacturing and did list such names in the telephone directory; that such adoption, use, and listing, while they were confusing to and did mislead the patrons of appellant, were not done for that purpose by appellees; that the confusion caused damage to appellant in the sum of $17.77; that the use of the names was not reasonably calculated to confuse appellant's patrons; that the adoption, use, and listing of the names by appellees were not actuated by malice; that appellant had obtained trade secrets and information relative to the conduct of the business of the Advance Neckwear Company which he used to the detriment of such company but that he received no orders for neckwear intended for the Advance Neckwear Company by reason of such use.

Upon these findings the trial court rendered judgment that appellant take nothing and that the Advance Neckwear, Arthur Goidl, and Johanna Goidl take nothing as against appellant on their cross-action. This appeal followed.

### Opinion.

Appellant's brief contains seventy-two assignments of error and twenty-nine propositions, but, after a careful reading of them, we have reached the conclusion that the major part of them can be disposed of by a determination of the question of to what extent one person will be liable to another of the same name for using his own name in the conduct of a business when such name may be confused with the name under which the other has already been conducting a similar business.

It appears to be well settled that a person cannot obtain a monopoly in a trade-mark consisting of his name merely, so as to debar others having the same name from using it in their own business, and that while, as against persons bearing a different name, his right in his name trademark may be absolute and exclusive, yet as against other persons bearing the same name no such exclusive right can be set up. 26 R.C.L. § 33, pp. 854, 855, and authorities cited.

Every person has the right to honestly use his own name in his own business, and any injury resulting therefrom to others is damnum absque injuria. Seligman v. Fenton, 286 Pa. 372, 133 A. 561, 47 A.L.R. 1186.

As was summarized in Meneely v. Meneely, 62 N.Y. 427, 20 Am.Rep. 489: "Every man has the absolute right to use his own name in his own business, even though he may thereby interfere with and injure the business of another bearing the same name; provided he does not resort to any artifice, or do any act calculated to mislead the public as to the identity of the establishments, and to produce injury to the other beyond that which results from the similarity of the names."

From a careful reading of the many authorities on this subject it appears that a person may not be enjoined from using his own name in his own business in the absence of evidence either showing a fraudulent intention to deceive the public and injure his competitor or facts from which such an intention will be presumed. We shall cite only a few of the many which we think support this conclusion.

In Wm. Rogers Mfg. Co. v. Simpson, 54 Conn. 527, 9 A. 395, 397, the Supreme Court of Connecticut said: "When the second bearer of a name uses it with due distinguishing precautions, and without actual fraudulent intent or representation that his wares are those of the first, he is not responsible for such confusion as results solely from the fact of similarity. * * * Because of confusion resulting from the use of identical names, with distinguishing symbols, there is not necessarily, as a matter of law, a fraudulent misrepresentation,—actual fraudulent intent remains to be proven as a fact."

In Burns v. William J. Burns International Detective Agency, Inc., 235 Mass. 553, 127 N.E. 334, 335, where the insertion of defendant's name in the telephone directory was depended upon to establish unfair competition, the court said: "The

only use of the defendant's name that was likely to cause anything more than incidental confusion of the plaintiff's agency with the defendant's, was in the arrangement in the telephone directory, where the words 'Burns Detective Agency' preceded the name 'William J.' Even if this finding were correct, the defendant practiced no fraud in the use of its name; it did not attempt by any artifice to deceive the public or induce the plaintiff's patrons to deal with it upon the supposition that they were dealing with the plaintiff, and there was no evidence that the change in the defendant's name or in the telephone directory was made for the purpose of misleading the plaintiff's customers."

In Silver Laundry & Towel Co. v. Silver (Mo.App.) 195 S.W. 529, 530, it was said: "A man, however, may use his own name honestly in conducting his business; and unless there is something calculated to deceive reasonably observant people, from which the chancellor can say that the name of the complaining party has been appropriated in such way as to enable the one appropriating it to prey upon the business of the other by that means, equity will not interfere to stop him."

In Dilworth v. Hake (Tex.Civ.App.) 64 S.W.(2d) 829, 830 (writ dismissed) the Waco court said: "There is no evidence that the abstracts prepared by appellee were addressed in such manner as to make them appear to be the same as those prepared by appellant, nor that appellee otherwise fraudulently attempted to mislead the public."

And in Brown Chemical Co. v. Meyer, 139 U.S. 540, 11 S.Ct. 625, 627, 35 L.Ed. 247, is found: "A man's name is his own property, and he has the same right to its use and enjoyment as he has to that of any other species of property. If such use be a reasonable, honest, and fair exercise of such right, he is no more liable for the incidental damage he may do a rival in trade than he would be for injury to his neighbor's property by the smoke issuing from his chimney."

■■ The findings of the jury here that the adoption and use of the names and the insertion of them in the directory was without intention to mislead or injure and that they were not actuated by malice find ample support in the evidence. And we cannot say that the facts are such as would raise a presumption of such intent on the part of appellees. The words "neckwear"

and "manufacturing" are merely descriptive, and, if appellant has been injured, it is by the use of the word "Goidl," which appellees had as much right to use as he did. If we be correct in these conclusions, then appellant has failed to establish any right to relief. Furthermore, we do not think that the arrangement in the telephone book was of such a character as to impose upon the public or on a person using ordinary care in the use thereof.

It frequently happens that several persons with the same surname, who are members of the same profession or engaged in similar kind of business, are found listed in telephone directories in close proximity to each other, and an ordinarily prudent person would not accept the first surname found as the one sought, but would in the exercise of reasonable care and information search for other information disclosed as to the identity of the person desired. With ordinary discrimination on the part of telephone users it would have been discovered that Arthur Goidl Neckwear Manufacturing Company, whose address was 915 Commerce, was not the Goidl Neckwear Manufacturing Company located at 1111 Commerce, and the fact that a very few of appellant's customers were misled by the way in which the names appeared in the telephone directory is not conclusive on the question.

The criterion is, Was such insertion reasonably calculated to confuse the public and the patrons of appellant? The jury found that it was not. In Edelstein v. Edelstein (Tex.Civ.App.) 6 S.W.(2d) 400, a case very similar to the one at bar, it was held, in the absence of the use of unfair means to create a false impression that the establishments were the same or that defendant's goods were made by plaintiff, a brother would not be restrained from using his surname in his business. Arthur Goidl testified that he had not transacted business under the names in question for a considerable period of time because of an injunction having been issued against their use and while being cross-examined he was asked if he knew what had happened to that case in the appellate court. When he attempted to reply, counsel for appellant objected on the ground that the record was the best evidence, whereupon the court permitted counsel for appellees to read the first paragraph of the mandate of the Court of Civil Appeals to the jury. Appellant's counsel then interposed an objection to such reading and has presented the correctness of the

court's action in this particular to this court for review.

 Under the facts, as above related, it seems that appellant's counsel invited any error which may have been committed, and it nowhere appears that the introduction of the mandate in any manner influenced the jury in the decision of any of the issues submitted to it. If error, it was harmless.

We feel that what we have said disposes of the various questions presented and have concluded that the numerous assignments of appellant should be overruled and the judgment of the trial court affirmed. It is so ordered.