**McCOY et, Plaintiffs, v. McCOY, Defendant.**

Common Pleas Court, Cuyahoga County.

No. 607878. Decided April 24, 1951.

Milton C. Portmann, Cleveland, for plaintiffs.
Krewson & Williams, Cleveland, for defendant.

## OPINION

By HOOVER, J:

This is a feud of the McCoys—not with the Hatfields—but with the McCoys, over the right to use their celebrated Irish name in the competitive furniture business.

Plaintiffs, George and Mabel McCoy, are partners, both in matrimony and in the furniture business and have their corner store at 4607 Clark Avenue. They are neither kith nor kin to the defendant, Leo McCoy, who has his corner store at 9700 Lorain Avenue. Both George and Leo were born McCoys. Neither business is incorporated.

Plaintiffs claim to have been in business in Cleveland over 20 years. They say they started at 1668 East 73rd Street, moved to 1003 Parkwood Drive in 1941, and then moved to their present location on Clark in 1945. In 1946, defendant, who had previously been a seller of lamps, entered the furniture business for the first time and established his store at 4313 Clark Avenue—about 3 blocks from plaintiffs' store. In June 1949, defendant moved to his present location about 3 or 4 miles away from plaintiffs' store. Consequently, the parties are no longer within such close irritation sight of each other and time and distance have eased their problem to a degree. This suit was filed in October 1949, several months after defendant's removal to Lorain Avenue. We are not concerned, therefore, with what defendant used to do (but no longer does or threatens to do) when proximity on Clark Avenue got the parties into each other's hair, except as it may throw light on the current situation.

Plaintiffs claim that they have been using the name "McCoy Furniture And Appliances" through the years, that they were the first users and that they have the exclusive right to use the name.

One cannot but sympathize with each of these McCoys just as one did with two gentlemen by the name of Herbert

who at the same time once set about the business of becoming governor. Nevertheless, each McCoy is using his family name and the general rule in Ohio and elsewhere is that one may use his own family name notwithstanding the prior use of the name by others in a similar business. 39 O. Jur., 380, Sec. 34; 63 C. J. 429, Sec. 118. The necessary and incidental inconvenience or loss thereby caused is immaterial. 63 C. J. 429-30, 433, Sec. 118.

However, there are definite exceptions to the general rule. Thus a subsequent user of the same family name can be enjoined from using it in the same business in the case of deception, artifice, fraud, contract, estoppel or an attempt to pass off his business as the business of the prior user of the name. 39 O. Jur. 380-81, Sec. 34, 409-10, Sec. 69; 63 C. J. 429-33, Sec. 118. None of these exceptions have been established here. The normal presumption is that the use of one's own name is an honest use. 63 C. J. 436, Sec. 119.

There is yet another exception to the general rule which has been recognized by our Court of Appeals and is so important that it deserves special attention. It is known as the doctrine of secondary meaning. It holds that where a family name, through the business of a prior user of that name, has acquired a secondary meaning, the prior user will be protected against a subsequent user of that name in the same business. 63 C. J. 433-36, Sec. 119.

What is a secondary meaning as applied to a family name? It is a second or additional meaning that has become attached to that name when, through use of that name in a particular kind of business in a particular area, that name, in the mind of the public, has come to be identified or associated with a particular owner's business. That identification need not be universal, but it must be by a substantial section of the buying public. A secondary meaning is a pointer—pointing to a particular business. A good example is the case of **Stern Furniture Co. v. Stern, 52 Abs 527**, decided by our Court of Appeals.

This McCoy case is different from the Stern case in that plaintiffs have failed to prove that "McCoy" has acquired a secondary meaning in the furniture business, that is, that in the furniture business "McCoy" means the plaintiffs' business. From the evidence, the Court has only the haziest, if any, idea about the nature or extent of plaintiffs' business —certainly nothing on which to establish a secondary meaning. Singularly, not one single independent witness came to testify for plaintiffs—not one customer, not one member of the trade, not one member of the public. The plaintiffs were their own sole witnesses. Particularly dim is the picture of

the nature and extent of plaintiffs' business before they moved on Clark Avenue. They claim to have been doing business prior to that on East 73rd Street and on Parkwood Drive which is near East 105th Street—for a period of at least 15 years. How far and intensely those East side operations echoed over Cleveland and into the West side we are not told. Plaintiffs did not introduce even such elementary written records as telephone books, city directories and the like, to show that through those years they held themselves out and were known to the public and in the furniture business under the name "McCoy Furniture And Appliances," where surely they must have been listed if prior use had created such a secondary meaning that Cleveland had come to recognize that in the furniture business "McCoy" meant plaintiffs' business.

Strangely, not even now does the name "McCoy Furniture And Appliances" appear on plaintiffs' store front. In fact, four different names appear there, namely "Geo. McCoy's Television, Furniture And Appliances"; "McCoy's"; "Geo. McCoy" and "McCoy Furniture."

With the litigants' permission, the court visited each McCoy store. We do not think that the defendant's storefront was designed to be passed off as plaintiffs." Their respective ideas of how to reach the public through a store front are entirely different. One literally uses a riot of colors and signs. The other, in color and signs, is paucity and simplicity personified. When being cross-examined about the signs on the front of plaintiffs' store, the plaintiff Mable McCoy exclaimed that they had "so darn many signs" she couldn't remember them. The two big words that dominate defendant's store front are "Furniture" and "Appliances." In fact, they are so big and blatant in comparison with defendant's own name that they steal the show away from it and on first glance one might think that the name of the proprietor was "Furniture Appliances" instead of Leo McCoy or McCoy. Perhaps that was what irked the plaintiff George McCoy to say on cross-examination that he didn't object to the defendant using the name McCoy, but that he did object to the defendant using "Furniture and Appliances." One may as well try to stop a competitor from using the words "grocery," beauty parlor,"

"drug store" or "bread." Words which are in general use to describe an article of trade or a kind of business belong to the people. There are exceptions but none have been established here. The words "Furniture And Appliances" are used by many competing stores in Cleveland as was shown by the current classified telephone directory produced at the trial. Plaintiffs can no more stop defendant from using

"Furniture And Appliances" than can competitors stop plaintiffs from using those words. 63 C. J. 424-426, Sec. 115, 393-396, Secs. 102 and 103; 39 O. Jur., 374-377, Secs. 27-29, 407-408, Secs. 66-67.

The parties are to be commended for attempting to solve their own difficulties. On defendant's store front, his full name "Leo McCoy" appears in no less than six places. On his stationery, envelopes, business cards, checks, receipts, statements and current telephone listing he is using his full name "Leo McCoy." On his business cards and statements he even has his picture. The plaintiffs, too, have in good faith attempted to solve the problem by putting Mr. McCoy's first name in front of McCoy, both in the telephone book and on plaintiffs' store front. Unfortunately when plaintiffs undertook to do this on their store front, instead of using the full name "George," they abbreviated it to—"Geo."—which, to one quickly passing by, might be taken to be defendant's first name—"Leo." Defendant says that he can't elongate or abbreviate his first name "Leo," but that plaintiffs don't have to create confusion by abbreviating "George."

One further thing has defendant done to solve the problem. On his business card and in the classified and telephone listing he bills himself as "The Real McCoy." That, the plaintiffs definitely do not like! They claim that is carrying the attempt to differentiate too far. They say that that implies that plaintiffs are not real McCoys.

Perhaps this is the first court in the world that has ever had to determine the meaning of the celebrated phrase "The Real McCoy." There is a historical dispute as to how it originated. As a student of Americana and as one who has slept and eaten in the hospitable mountain cabins of the feudin' McCoys of Peter Creek Hollow in Pike County, Ky.—along which hollow the rifles of a former generation of McCoys, in ambush, once dropped 16 Hatfields at once—it was surprising to learn that the authorities do not credit one of these with being the original "Real McCoy."

One version, that of O. O. McIntyre, is that the phrase originated when a drunk picked a quarrel with Kid McCoy, welter-weight champion of the world, refusing to believe that he was the prize fighter. After discovering his mistake and picking himself off the floor, as part of the res gestae he exclaimed "It's the real McCoy." Another version attributes the phrase to Bill McCoy, notorious Atlantic coast rum-runner in the early days of prohibition who was so honest, so the version says, that he carried only the best liquor; accordingly, "The Real McCoy, came to signify quality. The American

Language (1936) by H. L. Mencken, pp. 579-580; 31 C. J. S. 516-19, Sec. 12, 648-50, Sec. 67.

Whichever version one takes, certainly it must be said that the phrase is in daily use among the American people; that it is doubtful that there is a living McCoy who has not on some occasion referred to himself as "The Real McCoy;" and that when he did so he did not mean that all other McCoys were spurious.

The truth here is that both of these McCoys are "Real McCoys." This Court will not prohibit the defendant from using that innocuous phrase. Even in this serious world, people enjoy and the law permits to business men, and to others who desire to do it, a little harmless bugle blowing and drum-major strutting to snatch a share of the public's attention.

Plaintiffs' petition for injunctive relief is denied.