A. W. Cox Department Store Co.

*v.*

Cox's Incorporated, *a corporation,*

*and* Par-Progress, Inc., *a corporation*

(No. 13459)

Decided January 13, 1976.

*Earley, Bailey & Pfalzgraf, John S. Bailey, Jr.*, for appellants.

*Spillman, Thomas, Battle & Klostermeyer, R. Page Henley, Jr., McDougle, Davis, Handlan & Davis, Fred L. Davis, Jr.*, for appellee.

FLOWERS, JUSTICE:

This is a dispute between two retail businesses over the right to use the trade name "Cox's" in the same market area. A. W. Cox Department Store Co., which operates a retail store in downtown Parkersburg, instituted a civil action against Cox's Incorporated which was opening a store in the new shopping mall at Vienna, also in Wood County. The litigation is based upon the allegedly unlawful infringement by the defendant upon the plaintiff's trade name. The plaintiff and defendant are engaged in the retail sale of soft goods to the general public. Both corporations are family-owned businesses begun by persons named "Cox."

The trial court, sitting in lieu of a jury, enjoined the defendant from using the word "Cox," "Cox's," or any name which includes the same, in the operation of its business in Wood County. It is from this judgment that the defendant was granted an appeal. The principal question to be determined is whether, in the absence of fraudulent intent, the use of a confusingly similar trade

name may be enjoined when that trade name is the surname of its user.

The plaintiff corporation was chartered in 1914 by A. W. Cox. Its principal corporate officers are his descendants. The plaintiff corporation operates nineteen retail department stores in West Virginia, Ohio and Kentucky. Its largest store is located in Parkersburg, Wood County, West Virginia. That store has been in operation since 1928 and presently grosses over one million dollars in business each year. The plaintiff advertises its Parkersburg store as "A. W. Cox Department Store" and as "Cox's."

The defendant corporation, Cox's Incorporated, was founded by Mary Jane Cox in McKeesport, Pennsylvania, in 1872. In 1909, the business was incorporated by her son, Will J. Cox, under the name of "Will J. Cox Company." The business functioned under that name until 1934 when it was changed to "Cox's Incorporated." Cox's Incorporated operates seven retail clothing stores in western Pennsylvania. The present officers and stockholders of Cox's Incorporated are the descendants of Will J. Cox and Mary Jane Cox.

The dispute precipitating this litigation arose in 1972 when Cox's Incorporated decided to open a store in a shopping mall in Vienna, a few miles from the A. W. Cox store in Parkersburg, Wood County, West Virginia. The defendant leased space from the owners of the mall and commenced construction of its only retail store outside the State of Pennsylvania. During the construction of the store, the name "Cox's of Pittsburgh" was painted on plywood covering the window of the store. Robert M. Cox, Jr., an officer of Cox's Incorporated, testified that the phrase "of Pittsburgh" was used in an effort to distinguish the store from the Parkersburg store of A. W. Cox.

The plaintiff presented the testimony of several employees at its Parkersburg store to prove that confusion resulted from the simultaneous operation of two sepa-

rate businesses within close proximity under the same name. These witnesses testified that a number of customers had inquired whether the plaintiff was constructing the store in the mall; whether plaintiff's charge cards would be accepted at that store; or whether the defendant's credit cards could be used at the plaintiff's store. According to the record, at least a dozen individuals submitted to the plaintiff applications for employment at the defendant's store. The plaintiff's store offered a wide range of merchandise, including men's and children's clothing as well as appliances. The plaintiff's evidence reflected that in some instances the line of women's merchandise sold by the defendant was identical or at least very similar to the merchandise sold by the plaintiff.

The defendant's evidence, consisting of the testimony of three Cox family members who hold positions with the corporation, indicated that Cox's Incorporated marketed mostly women's clothing, jewelry and other accessories. These witnesses distinguished the business operation of the two stores on the basis that a higher quality and more limited merchandise was offered by Cox's Incorporated.

Following the issuance of a preliminary injunction, the defendant changed the name of its store from "Cox's" to "Corner on the Market." The defendant continued, however, to use stickers, bearing the name "Cox's," in conjunction with the "tagging" of at least 50 percent of its merchandise. The manager of the "Corner on the Market" admitted that one out of ten people would look at the ticket and inquire whether there was any association with the A. W. Cox store.

In determining the relative rights of business competitors to use their family names to the detriment of each other, courts have seemed disposed to begin reverently with the proposition that "every person has the right to

use his own name." Pike jocularly traces this right to the law of England, citing *Burgess v. Burgess*[1] wherein:

> "* * * the plaintiff and his father had sold *Burgess's Essence of Anchovies* since 1880. The son, with striking lack of originality, called his competing product *Burgess's Essence of Anchovies.*"[2]

In denying an injunction Lord Justice Bruce said:

> "All the Queen's subjects have a right, if they will, to manufacture and sell pickles and sauces, and not the less that their fathers have done so before them. All the Queen's subjects have a right to sell these articles in their own names, and not the less so that they bear the same name as their fathers * * *."[3]

In this country the right has been described as "natural and inalienable * * * guaranteed by the very first clause of our Constitution, without which the right to acquire, possess, and protect property would be of little worth."[4] In early cases the courts adhered strictly to the theory of free competition. 41 Tul. L. Rev. 952, 954 (1967). A New York court recoiled at the thought of a person having a monopoly in the use of his own name which would "debar all other persons of the same name from using their own names in their own business."[5] The incidental damages which were incurred as a result of such unfettered competition were considered *"damnum absque injuria."*[6]

---

[1] 3 De G. M. & G. 896 (1853).

[2] Pike, *Personal Names as Trade Symbols*, 3 Mo. L. Rev. 93, 109 (1938).

[3] *Burgess v. Burgess, supra* note 1 at 904–05.

[4] *Hilton v. Hilton*, 89 N.J. Eq. 182, 183, 104 A. 375, 376 (1918).

[5] *Meneely v. Meneely*, 62 N.Y. 427, 432 (1875).

[6] *Russia Cement Co. v. Le Page*, 147 Mass. 206, 208, 17 N.E. 304, 305 (1888); *Gates v. Gates Coal Co.*, 114 Pa. Super. 157, 174 A. 3 (1934); 3 R. Callmann, Unfair Competition, Trademarks and Monopolies, §85.2(a), p. 1006 (3rd ed. 1969). *See Burns v. William J. Burns*

A clear exception to the rule, however, was carved out by the courts to thwart those who would poach on the good name of another. The court in *Garrett v. T. H. Garrett & Co.*, 78 F. 472, 478 (6th Cir. 1896), set the tone in stating:

> "* * * While it is true that every man has a right to use his own name in his own business, it is also true that he has no right to use it for the purpose of stealing the good will of his neighbor's business, nor to commit a fraud upon his neighbor, nor a trespass upon his neighbor's rights or property; and, while it is true that every man has a right to use white paper, it is also true that he has no right to use it for making counterfeit money, nor to commit a forgery. It might as well be set up, in defense of a highwayman, that, because the constitution secures to every man the right to bear arms, he had a constitutional right to rob his victim at the muzzle of a rifle or revolver."

Within this context this Court decided *Gluck v. Kaufman*, 117 W. Va. 685, 186 S.E. 615 (1936) and *Foglesong v. Foglesong Funeral Home, Inc.*, 149 W. Va. 454, 141 S.E.2d 390 (1965). In Gluck, the plaintiff sought to enjoin the defendant's use of *"The* Darling Shop" as a trade name in Wheeling, alleging that Wheeling customers would confuse the defendant's store with plaintiff's "Darling Shop" in Youngstown (Ohio), Parkersburg, Clarksburg and Charleston. The Court held the plaintiff had sufficiently stated a cause of action by "seeking to enjoin an unfair trade practice under the common law rule."

Similarly in the *Foglesong* case, the Court adhered to the principle that every person had the right to use his own name in his own business so long as his name was used truthfully and in good faith. Since there was sufficient evidence of fraudulent intent to support the injunctive relief, there was no reason for the Court to go

---

*International Detective Agency, Inc.*, 235 Mass. 553, 127 N.E. 334 (1920).

beyond the early exception to the general rule. Moreover, the evidence was such that the court not only enjoined the "second user" of the name but also enjoined the "original" Sam Foglesong, plaintiff, and his partners from the future use of this family name in their businesses.

Thus the absolute right of a person to use his own name in competition with others was restricted where the courts could detect any measure of artifice, fraud or deceit.

This limited exception, however, did nothing to alleviate the confusion and deception which resulted from the bona fide use of one's name in competition with another's business.

A myriad of cases illustrate the considerable temptation to continue the use of a family name when an individual left or sold a business that had been operated under his name. It is not unnatural to expect that family members would return to the business which they knew best or for which they were best known. Frequently they did just that under circumstances which appeared bona fide and which excluded any basis of fraud or deceit upon which they might be restrained. For example, *Donnell v. Herring-Hall-Marvin Safe Co.*, 208 U.S. 267 (1908); *National Distillers Products Corp. v. K. Taylor Distilling Co.*, 31 F. Supp. 611 (E.D. Ky. 1940). In the *Donnell* case, the Supreme Court held that the sons of the plaintiff's founder were entitled to continue use of their surname in a new business of manufacturing safes, provided they did nothing to indicate that they were the successors of the original company which had used the same name.

Similarly in the *Taylor* case, the defendant had established a whiskey manufacturing business under the name of "Taylor" and subsequently sold the business to the plaintiff. When the defendant commenced a new business and began marketing Taylor whiskey, the plaintiff sought injunctive relief. The defendant's use of the

name "Taylor" was restricted by the court only by the requirement that such use be accompanied by a statement indicating that the defendant was not the successor of the maker of "Old Taylor" whiskey.

Where two families in good faith marketed identical products under identical family names, application of the rule afforded little, if any, relief from the resultant confusion. In *E. & J. Gallo Winery v. Gallo*, 87 F. Supp. 433 (N.D. Ohio 1949), two families named "Gallo," both of whom were established wine manufacturers, claimed the right to use the family name in their business. The court held that the defendant, the lesser known Gallo family, could not be prohibited from using the name simply because it had been pre-empted on a national scale by the more recent user. The defendant was permitted the use of the family name in Ohio as it had been used prior to the plaintiff's entry into the market.

Likewise, in *L. E. Waterman Co. v. Modern Pen Co.*, 235 U.S. 88 (1914), wherein both the plaintiff and the defendant marketed pens under the name of Waterman, the defendant was permitted the use of his name so long as he juxtapositioned thereto in equally large letters the phrase "not connected with L. E. Waterman Co."

As a consequence of attempting to balance the rights of the parties in the absence of the malevolence of one of them, the courts became aware of a third set of rights. These rights belong to the consuming public. They are embodied within a doctrine frequently denominated as "secondary meaning." The doctrine has been defined as the acquisition of an additional meaning "through use of that name in a particular kind of business in a particular area, [so that] that name, in the mind of the public, has come to be identified or associated with a particular owner's business." *McCoy v. McCoy*, 98 N.E.2d 435, 437 (Ohio Com. Pl. 1951). "Secondary meaning" is perhaps a misleading term, which may be more accurately described as the acquisition of a "new primary meaning." Pike, *Personal Names as Trade Symbols*, 3 Mo. L. Rev.

93, 105 (1938). *See, G. & C. Merriam Co. v. Saalfield,* 198 F. 369, 373 (6th Cir. 1912). A classic example of the acquisition of secondary meaning is demonstrated in *Compania "Ron Bacardi" S.A. v. American Bacardi Rum Corp.,* 63 N.Y.S.2d 610 (Sup. Ct. 1934). There the New York court absolutely enjoined the defendant's use of the Bacardi name because it had become "* * * so identified with a certain rum that it is almost a common noun."

Under this theory, relief may be granted irrespective of any fraudulent intent. To balance between the right to the use of one's own name in a business and the right to protection from infringement on that use where a new primary meaning is established, courts have employed "confusion" as a standard. 41 Tul. L. Rev. 952, 954.

In determining whether confusion is likely to result from the coexistence of two businesses operating under the same name, factors which courts have generally considered are the type of business,[7] the degree of competition,[8] the similarity of products,[9] the former affiliation of the parties,[10] the timeliness of the action,[11] and the geographic scope of the operation.[12]

The acquisition of a secondary meaning or a new primary meaning must be proved by a preponderance of the evidence or by substantial evidence indicating that the second use will result in confusion. *Rosso & Mastracco v. Giant Food Shopping Center,* 200 Va. 159, 104 S.E.2d 776 (1958).

---

[7]*Brooks Bros. v. Brooks Clothing of California,* 60 F. Supp. 442 (S.D. Cal. 1945).

[8]*McCoy v. McCoy, supra.*

[9]*Alexander's Department Stores v. Rapoport,* 113 N.Y.S.2d 718 (1952); *Stern Furniture Company v. Stern,* 52 Ohio L. Abs. 527, 83 N.E.2d 804 (1948).

[10]*Donnell v. Herring-Hall-Marvin Safe Co., supra.*

[11]*See* Handler-Pickett, *Trade-Marks and Trade Names—An Analysis and Synthesis,* 30 Col. L. Rev. 168, 200 (1930).

[12]*Alexander's Department Stores v. Rapoport, supra.*

When confusion results from the simultaneous use of the same name in competing businesses, relief is afforded by the issuance of either a qualified or absolute injunction. Qualified relief has been awarded a plaintiff by requiring the defendant to attach some explanatory phrase to the use of his name or to restrict the territory in which the defendant is permitted to operate his business. In *Chickering v. Chickering & Sons*, 215 F. 490 (7th Cir. 1914), the defendant was required to adopt an arbitrary name such as *Acoustigrande* and indicate inconspicuously beneath it his full name and address. Similarly in *Howards Clothes, Inc. v. Howard Clothes Corp.*, 52 N.W.2d 753 (Minn. 1952), the court ordered the defendant to add the distinguishing phrase "of New York" to his name and permitted him to continue doing business.

This is precisely where we find ourselves in the instant case. Given the bona fide use of the same family name by both parties, we confront the issue of whether the lower court abused its discretion in not permitting at least a restricted use of the name to the second user in the Wood County area. The appellant adroitly concedes that the lower court is entitled to regulate the bona fide competing use of family names but contends that the court should allow the defendant a qualified use of its own name by the addition of identifying words. Appellant contends "of Pittsburgh" following the name "Cox's" sufficiently satisfies the public need to be spared from confusion and that the action of the trial court in so completely enjoining all use of the family name is unnecessary, hence an abuse of the court's discretion.

We think it wisely observed that halfway limitations which do not successfully destroy the likelihood of confusion usually prompt parties to instigate further litigation. 41 Tul. L. Rev. 952, 956 (1967). The administration of justice should serve to spare controversy not promote it.

The addition of qualifying or restrictive words to a business name does not necessarily serve to eliminate public confusion. While the Supreme Court may know

the difference between Arthur A. Waterman and L. E. Waterman, we suspect the purchasers of fountain pens do not. Pike, *Personal Names as Trade Symbols*, 3 Mo. L. Rev. 93, 119 (1938). As Lord Macnaghten said in the famous Stone Ale case: "Thirsty folk want beer, not explanations." *Montgomery v. Thompson*, A.C. 217 (1891). The evidence in the instant case does not establish that the Parkersburg public understood their original "Cox's" was "of Charleston," hence adding "of Pittsburgh" does not necessarily create a distinction between the stores. To the contrary, the trial court found that even a limited use of the word "Cox's" would cause confusion to the public, "the name being to them identical * * *."

> "The law is not made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions." *Florence Mfg. Co. v. J. C. Dowd & Co.*, 178 F. 73, 75 (2nd Cir. 1910).

The plaintiff strengthens its claim to an absolute injunction by acting promptly before the defendant has built up a considerable goodwill without objection. Handler-Pickett, *Trade-Marks and Trade Names—An Analysis and Synthesis*, 30 Col. L. Rev. 168, 200 (1930). While the absolute injunction will cause some loss to this second user of the name in the area, such drastic relief is made necessary by its own choice to enter the area where the name is already so well established. "To paraphrase Mr. Justice Holmes, the mere fact that the defendant is a late comer is enough to put him under a disability."[13] The disability is not exclusionary. The defendant still may do business in the area and the absolute injunction granted insures that neither the public nor the plaintiff will be harmed by such choice. At the

---

[13]Handler-Pickett, *supra* note 11 at 198.

same time, the loss by comparison to the defendant is minimal.

Though counsel for the appellant has ably made their thrust at the most vulnerable point in the lower court's order—the refusal to allow even a restricted use of defendant's own name—we think the decision below is well-reasoned and sound, falling far short of any inadequacy which would justify reversal.

In the instant case, there was direct and uncontroverted evidence of confusion, resulting from the pursuit by two corporations of similar retail ventures under the same name in a confined geographical area. Upon this evidence, the trial court found that the operation of these two businesses in direct competition created confusion which could not be eliminated by the addition of explanatory language. A review of the record discloses sufficient evidence to support these findings.

This Court has repeatedly held that findings of fact by a trial court, sitting without a jury, are entitled to peculiar weight upon appeal. *Cumberland & Allegheny Gas Co. v. Hatcher*, 147 W. Va. 630, 130 S.E.2d 115 (1963). The law accords to such findings the same weight as the verdict of a jury. *Bluefield Supply Co. v. Frankel's Appliances, Inc.*, 149 W. Va. 622, 142 S.E.2d 898 (1965). Findings of fact of a trial court, sitting in lieu of a jury, will not be reversed unless they are plainly wrong, against the preponderance of the evidence or without evidence to support them. *State ex rel. Pingley v. Coiner*, 155 W. Va. 591, 186 S.E.2d 220 (1972); *Mahoney v. Walter*, W. Va., 205 S.E.2d 692 (1974). *See* R.C.P. 52(a); *Creasy v. Tincher*, 154 W. Va. 18, 173 S.E.2d 332 (1970); *Lewis v. Dils Motor Co.*, 148 W. Va. 515, 135 S.E.2d 597 (1964).

For reasons stated in this opinion, the judgment of the Circuit Court of Wood County is affirmed.

*Affirmed.*